UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LEON SHABOTT, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) CIVIL ACTION No.04-11575-JLT |
| MERCURY AIR GROUP, INC., | ) Referred to Magistrate Judge RBC |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT MERCURY AIR GROUP, INC.'S MEMORANDUM IN SUPPORT OF ITS RENEWED MOTION FOR SUMMARY JUDGMENT

The defendant Mercury Air Group, Inc. ("Mercury") submits this memorandum of law in support of its renewed motion for summary judgment.

### INTRODUCTION

This commercial dispute, which was filed on July 14, 2004, arises out of repairs made by Mercury to the plaintiff's airplane on or before July 13, 1998. The allegations are that Mercury failed to properly repair the airplane. Such claims are governed by the six year statute of limitations for contract actions. As the causes of action arose more than six years prior to filing suit, they are time-barred. To the extent the plaintiff alleges that additional written contracts were entered into after July 13, 1998, they all relate solely to the compensation Mercury would be obligated to pay if it failed to properly repair the airplane under its original agreement to do so and, therefore, they cannot constitute new contracts. The

1

alleged additional contracts also fail for lack of consideration. Moreover, the plaintiff would be unable to prove that such additional contracts exist as, without copies, his introduction of them is barred by the Best Evidence Rule.

## FACTS[1]

On or before June 1998, the plaintiff Leon Shabott ("Shabott") purchased a Beechcraft twin bonanza airplane ("Airplane") for $35,000. SMF¶1. In June 1998, Shabott brought his Airplane to Mercury to perform certain repairs to its engines. SMF¶2-3. At that time, Mercury made some repairs to the Airplane, including the installation of hydraulic lifters in both engines. SMF¶4. Mercury then returned the Airplane to Shabott on or before July 13, 1998. SMF¶5.

On or before July 13, 1998, Shabott flew the Airplane again; discovered that it still had problems (the engines failed); and returned the Airplane to Mercury for further repairs on the very same day he had picked it up. SMF¶6-7. In connection with his request for further repairs, Shabott asked that the engine of the Airplane be shipped to a third party, Aviation Engines, Inc. ("Aviation Engines"), for inspection. SMF¶6. Mercury complied, and Aviation Engines

---

[1] The source of all facts set forth herein is contained in the Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment ("SMF¶¶_.") which is filed herewith. Such sources are not repeated in this Memorandum.

reported that the most recent problems probably arose from the repairs to the hydraulic lifters made by Mercury on or before July 13, 1998.  SMF¶6.

Shabott also claims that, subsequent to his test flight and return of the plane to Mercury, he entered into two additional written agreements with Mercury which give rise to some of his claims in this lawsuit. SMF¶10. The first of these agreements allegedly contained Mercury's promise to pay to repair the plane if Aviation Engines determined that Mercury had caused the problems. SMF¶11. Shabott contends that this agreement was reduced to a one page writing of which he "knows" he received a copy. SMF¶12. He cannot find this alleged document. SMF¶12. Shabott also acknowledges that his expectation was that Mercury would have to compensate him for any damage caused by it, notwithstanding such an agreement. SMF¶13. Mercury did not receive anything in exchange for this alleged agreement.

The second such additional written agreement, Shabott contends, involved Mercury's agreement to store the plane in such a fashion that it would not be further damaged. SMF¶14. Shabott has no copy of this agreement either. SMF¶15. Again, Mercury did not receive anything in exchange for this alleged agreement.

Shabott has not and cannot allege any consideration for these two additional agreements, as they are nothing more, if in fact they ever existed, than the reiteration of terms implicit in the original contract for repair of the plane by Mercury. SMF¶16. Shabott also admits that he has never paid Mercury for storage of the plane, beyond his original payment for the repair work which he made before the plane was returned to him. SMF¶17.

On July 14, 2004, Shabott filed his complaint against Mercury for the damage caused by the repairs made in June 1998. SMF¶18.

ARGUMENT

I.  Standard

Summary judgment is appropriate where, as here, "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.56(c). See Magee v. United States, 121 F.3d 1, 3 (1st Cir. 1997).  The Court may consider pleadings, depositions, admissions on file and affidavits.  Id.  Once the moving party has demonstrated that no genuine issue of material fact exists, the opposing party "must come forward with 'specific, provable facts which establish that there is a triable issue.'"  Aponte Matos v. Toledo Davila, 135 F.3d 182, 186 (1st Cir. 1998)(quoting Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91 (1st Cir. 1994)).

Not every factual conflict, however, necessitates a trial. It must be both material, i.e., "a disputed fact must have the potential to 'affect the outcome of the suit under governing law,'" Hinchey v. NYNEX Corp., 144 F.3d 134, 140 (1st Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)), and genuine, i.e., whether the evidence is sufficient to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party, United States v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The non-moving party may not rely on conclusory allegations or unsubstantiated denials. Magee, 121 F.3d at 3.

Applying these principles, it is clear that the undisputed material facts support only the conclusion that, as a matter of law, the claims are barred by the six year statute of limitations.

II. Mercury Is Entitled to Summary Judgment Because All Claims Are Time Barred by the Applicable Six Year Statute of Limitations Set Forth in Mass. Gen. Laws. c. 260, §2

The Complaint states one cause of action for breach of contract. Such a cause of action is subject to the six year statute of limitation set forth in Mass. Gen. Laws. c. 260, §2.[2] See Berezin v. Regency Savings Bank, 234 F.3d 68, 73

---

[2] Mass. Gen. Laws c.260, §2 provides, in relevant part, as follows: "Actions of contract. . .shall, except as otherwise provided, be commenced only within six years next after the cause of action accrues."

(1st Cir. 2000) (applying six year Massachusetts statute of limitations on contract claim in diversity action); Wolverine Insurance Co. v. Tower Iron Works, Inc., 370 F.2d 700, 702-03 (1st Cir. 1966) (applying six year Massachusetts statute of limitations on contract claim in diversity action). "The general rule is that a contract action accrues at the time the contract is breached." Berkshire Mutual Insurance Company v. Burbank, 422 Mass. 659, 660, 664 N.E.2d 1188, 1189 (1996). See Campanella & Cardi Construction Company v. Commonwealth, 351 Mass. 184, 185, 217 N.E.2d 925, 926 (1966). Here, there can be no doubt that the breach occurred, if at all, when Mercury allegedly failed to make the repairs properly prior to the return of Shabott's plane to him on or before July 13, 1998. See Fall River Housing Authority v. H.V. Collins Company, 414 Mass. 10, 12 16, 604 N.E.2d 1310, 1314 (1992)(cause of action for breach of contract for work to be performed arises when the work is completed). All damages necessary to provide Shabott with the benefit of the bargain (i.e., the delivery back to him of a fully repaired plane) arose from this alleged breach. See, e.g., Hetherington and Sons v. William Firth Company, 210 Mass. 8, 20, 95 N.E. 961, 964 (1911) (defining contract damages in Massachusetts as providing a plaintiff the benefit of his bargain). As this suit was not filed until July 14, 2004, more than six years after the

6

breach, all claims are time-barred.  Therefore, for this
reason alone, Mercury is entitled to summary judgment on all
claims asserted against it.

III.  Mercury Is Entitled to Summary Judgment Because the
Discovery Rule Does Not Apply to Extend the Statute of
Limitations

     In limited circumstances, the Massachusetts courts have
applied a discovery rule to extend the six year statute of
limitations for contract actions.  See Hendrickson v. Sears,
365 Mass. 83, 310 N.E.2d 131 (1974).  Such an extension
depends upon whether the facts were "inherently unknowable,"
as opposed to unknown, to the injured party.  See The
Saenger Organization, Inc. v. Nationwide Insurance Licensing
Associates, Inc., 119 F.3d 55, 65 (1st Cir. 1997)
("Inherently unknowable" standard is no different from the
"knew or should have known" standard and applies only to
knowledge of facts which should make a plaintiff aware he
has been damaged, not to the legal theory for a cause of
action). Moreover, it appears that this theory has been
applied in Massachusetts only where there has been some
element of deceit or where the defendant had the ability to
keep the injured party from discovering the claim.  See,
e.g., Melrose Housing Authority v. New Hampshire Insurance
Company, 402 Mass. 27, 32-33, 520 N.E.2d 493, 497-98 (1988),
and cases cited.  Neither of these circumstances applies
here.  Shabott has made no allegations that Mercury somehow

deceitfully prevented him from learning of his plane's
condition after it was repaired, nor could he. Nor can he
argue that Mercury somehow had the means to keep him from
learning of the problems with his plane; to the contrary, it
returned the plane to him immediately following its repair
with no knowledge of any problems and he promptly took a
test-flight and discovered them. At that time, Shabott would
argue, he was entitled to be compensated as necessary to
return his plane to a flyable condition. Therefore, the
discovery rule should not be applied to extend the statute
of limitations beyond six years from the date when Mercury
returned Shabott's plane to him, July 13, 1998, and he had
access to discover what was causing the engine problems.

IV. Mercury Is Entitled to Summary Judgment Because Even If
the Discovery Rule Applied, Shabott Had the Necessary
Access More than Six Years Prior to Filing Suit

Moreover, even if the discovery rule were applied, the
claims would still be time-barred. There is no allegation,
nor could there be, that Mercury hid the repairs from
Shabott. They were all knowable to Shabott when the
Airplane was returned to him, and his subsequent request
that the plane be tested by a third party strongly suggests
he had immediate suspicions that the problems might be
Mercury's fault. And rather than attempt to hide anything,
Mercury agreed to deliver the plane to Aviation Engines.
This was all part of the continuous access Shabott had once

the plane was returned to him on or before July 13, 1998,
and confirms that all facts were knowable to Shabott at that
time.  See The Saenger Organization, 119 F.3d at 65 (1997).

Moreover, even in tort cases where the discovery rule
is regularly applied to delay the start of a limitations
period, "[t]he statute of limitations starts to run when
events have occurred that were reasonably likely to put the
plaintiff on notice that someone may have caused [him]
injury (emphasis added)." Bowen v. Eli-Lilly & Co., Inc.,
408 Mass. 204, 207 (1990). The law in Massachusetts does not
require that a plaintiff have reason to believe the
defendant, in particular, caused his injuries. Id. at 208.
Shabott cannot claim that, because he did not know the
specific reason for the problems with his plane on July 13,
1998, it was enough to delay the statute from running; it is
enough that he knew of the problems and was in a position to
investigate them and determine their cause and the
responsible party. That Aviation Engines quickly discovered
what it contended were the cause of the problems, i.e.,
Mercury's repairs, establishes that such problems and their
cause were not inherently unknowable.

In fact, the International Mobiles case cited by
Shabott in his opposition to Mercury's first motion for
summary judgment is instructive. It demonstrates Shabott's
fundamental misunderstanding of the application of the

"inherently unknowable" standard, and actually supports
Mercury's position. "The inherently unknowable wrong must be
incapable of detection by the wronged party through the
exercise of reasonable diligence." International Mobiles
Corp. v. Corron & Black/Fairfield & Ellis, Inc., 29 Mass.
App. Ct. 215, 222 (1990). Clearly the wrong here was not
inherently unknowable such that a delay in the statute was
warranted; the wrong was plainly detectable by Aviation
Engines through the exercise of reasonable diligence by
Shabott.  In fact, Aviation Engines issued its opinion
within several weeks.

To quote another case cited by Shabott, the Court, in
describing its rulings on cases which arose prior to the
adoption of certain statutes of limitation, stated that "a
cause of action accrues on the happening of an event likely
to put the plaintiff on notice." Hendrickson v. Sears, 365
Mass. 83, 89 (1974). In this case, that event was Shabott's
discovery of problems, both continuing and new, with his
plane during his test flight on or before July 13, 1998,
following work performed on it by Mercury.  Therefore, this
is when Shabott's cause of action accrued for breach of
contract.

Thus, the discovery rule cannot extend the statute of
limitations beyond July 13, 2004, six years after the date
of that test flight and the return by Shabott of the plane

to Mercury.  The claims, which were filed on July 14, 2004
are, therefore, time barred.

V.    The Best Evidence Rule Precludes the Admission of
Evidence Regarding the Contents of the Additional Alleged
Contracts for Compensation for Damage to and Storage of His
Plane

The Best Evidence Rule is a long standing rule of
evidence that originally required the production of an
original document when a document was otherwise admissible
in evidence at trial. It is now nearly defined by exceptions
to it which widely permit the use of copies rather than
originals.  The main purpose of the rule is to protect
against error in the recollection of the contents of
documents and to provide some way for the Court to be
assured of such matters relating to authenticity of
signatures, handwriting and the like. See Evidence, Liacos,
P., 7th ed., 1999, pp. 746-747.

While there are exceptions to the rule that sometimes
excuse the production of even a copy of a document when
attempting to prove its contents, none are here available to
Shabott. Federal Rule of Evidence 1007, applicable where the
party against whom evidence of a document's contents is
offered has testified or made admissions regarding the
existence and contents of such document, is not available to
Shabott because Mercury denies that the additional written
agreements alleged by Shabott ever existed. Shabott has
offered no evidence that the documents were lost or

destroyed while in Mercury's possession. See Fed. R. Evid.
1004; Liacos at pp. 748-750. He has not alleged that Mercury
has located and failed to produce them. Id. Rather, he
acknowledges that he obtained copies (or even originals) of
them at or about the time they were allegedly created, but
has lost them or at least been unable to locate them. He
contends that he was in a rather tumultuous phase of his
life at the time they were created and were likely lost as a
result of his moving from one place to another and his
careless record keeping. SMF¶15. This carelessness in their
handling is the very reason why admission of evidence
regarding their contents should be precluded. See, e.g.,
Seiler v. Lucasfilms, Ltd., 797 F.2d. 1504, 1508 (9th Cir.,
1986)(proponent must either produce the document or "show
that it is unavailable through no fault of his own" citing
McCormick on Evidence: " In proving the terms of a writing,
where the terms are material, the original must be produced
unless it is shown to be unavailable for some reason other
than the serious fault of the proponent.") McCormick, § 230,
at 704. Otherwise, the "dangers of fraud are too great."
Seiler at 1508. It seems rather odd that Shabott would ask
Mercury to sign such documents, without carefully preserving
them for use in court, which is the only context in which
they would be useful. The "dangers of fraud" are certainly

present here where Mercury denies that such documents ever
existed.

VI.  The Additional Written Agreements Alleged By Shabbott
to Have Been Entered Into After July 13, 1998 Are Not
Enforceable Because They Are Nothing More Than Reiterations
of the Original Contract Without Additional Consideration

Notwithstanding the operation of the Best Evidence Rule
to preclude evidence of the contents of the alleged
additional agreements, any contention by Shabott that they
constituted separate, enforceable contracts should be
rejected, as such an argument is nothing more than a futile
attempt to bring some claims within the applicable statute
of limitations. That this is so is evident from an
examination of what Shabott claims to be the subject of the
first agreement.

Shabott contends that the first such additional written
agreement provided that, in the event Aviation Engines found
that Mercury had caused the problems Shabott encountered
during his test flight on July 13, 1998, then Mercury would
be responsible for all repair costs.  In other words,
Mercury would make Shabott whole if it had breached its
contract; Mercury would provide him the benefit of his
bargain, his plane in properly functioning order. This is
nothing more than a statement of what Mercury's
responsibility would be at law if it were deemed to have
breached the contract for the original repair of his plane.
See, e.g., Hetherington and Sons v. William Firth Company,

210 Mass. 8, 20, 95 N.E. 961, 964 (1911) (defining contract damages in Massachusetts as providing a plaintiff the benefit of his bargain). It is not a separate contract and would not be even if the writing which allegedly reflects it existed and were available.

Other facts also compel this conclusion. Shabott has never alleged that this agreement contained any provisions for additional payment by him to Mercury. In fact, he admitted his belief that he would be entitled to be made whole by Mercury if it were at fault whether this agreement existed or not. SMF¶13. Shabott admits that the only payment he ever made to Mercury, and the only one it ever requested, was the payment he made for the repair work prior to picking up the plane, testing it and returning it on July 13, 1998. He admits that he never paid storage fees for his plane to Mercury.

For similar reasons, Shabott's claim regarding the manner of the storage of the plane must fail. The plane was in Mercury's possession only as an incident to its agreement to perform repairs on it. As set forth above, Shabott had notice of a breach of this contract no later than July 13, 1998, when he experienced problems during a test flight, including problems he had not experienced before. As stated above, his damages for such a breach were to be made whole, i.e., to be in possession of a plane in proper working

14

order, or at least the means to acquire one. He cannot avoid the action of the statute of limitations simply by alleging that certain things incident to performance of the original contract were reduced to writing at a later date and therefore somehow became a separate contract.

### CONCLUSION

For the reasons set forth herein, the defendant Mercury Air Group, Inc. respectfully requests that the Court enter an Order granting its motion for summary judgment on all claims asserted against it by the plaintiff Leon Shabott.

DEFENDANT
MERCURY AIR GROUP, INC.

By its attorneys,

David C. Aisenberg, BBO#545895
Looney, Cohen, Reagan & Aisenberg LLP
109 State Street
Boston, MA 02109
(617) 371-1050

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the
above document was served upon the
attorney of record for each other party
by mail/hand on 10/31/05
_____