UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LEON SHABOTT,<br><br>　　Plaintiff,<br>v.<br><br>MERCURY AIR GROUP, INC.,<br><br>　　Defendant. | )<br>)<br>)<br>)<br>) CIVIL ACTION No.04-11575-JLT<br>) Referred to Magistrate Judge RBC<br>)<br>)<br>) |

**DEFENDANT MERCURY AIR GROUP, INC.'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS RENEWED MOTION FOR SUMMARY JUDGMENT**

Defendant Mercury Air Group, Inc. ("Mercury") submits this Statement of Undisputed Material Facts in Support of Its Renewed Motion for Summary Judgment pursuant to Rule 56.1 of the Local Rules for the United Sates District Court, District of Massachusetts.

1. On or before June 1998, the plaintiff Leon Shabott purchased a Beechcraft twin bonanza airplane ("Airplane") for $35,000. See Deposition of Leon Shabott, Ex. A to Affidavit of David C. Aisenberg, pp.23, 25 ("Shabott Dep. pp. ___".)

2. On or about June 24, 1998, Shabott "contracted Mercury" to do routine service to his Airplane. Complaint, ¶5; See Affidavit of Michael Wasson ("Wasson"), ¶¶ 5,6 (Wasson Aff., ¶__).

3. Shabott acknowledges that he has no reason to dispute that the date he delivered the plane to Mercury was June 24, 1998. See Shabott Dep. pp.171-172.

1

4. Mercury made some repairs to the Airplane, including the installation of hydraulic lifters in both engines. See Wasson Aff., ¶6.

5. Mercury returned the Airplane to Shabott on or before July 13, 1998. See Wasson Aff., ¶7. Shabott admits he has no evidence as to what date it was actually returned and has nothing to refute Wasson in this regard. See Shabott Dep. pp.172-173, 263-264, 339-342.

6. On or before July 13, 1998, Shabott flew the Airplane; discovered that it still had problems; and returned the Airplane to Mercury. See Shabott Dep. pp.174, 177-178, 189, 347-349. At his request, the plane was delivered to Aviation Engines, Inc. for inspection, which reported that the latest problems may have resulted from Mercury's repair work. See Complaint, ¶6; Wasson Aff., ¶¶ 8-11; Shabott Dep. pp.63.

7. While again claiming that he has no evidence of the date on which he returned the plane to Mercury, Shabott acknowledges that he flew the plane immediately after and on the same date on which it was returned to him; that this was the only occasion on which he flew it after its return to him; that he experienced problems during this sole flight which he had never before experienced; and that he returned the plane to Mercury on the very same day he had picked it

up and test flown it. See Shabott Dep. pp.174, 177-178, 189, 347-349. Shabott admits that he had full access to the plane during his test flight on or before July 13, 1998, to discover the problems with it. See Shabott Dep. pp.103, 273, 348-349.

8.  Shabott admits that he has no evidence to refute Wasson's statement, based on Wasson's contemporaneous written notes, that Shabott returned the plane to Mercury for the second time on July 13, 1998. See Shabott Dep. pp.189, 263-264, 340.

9.  In fact, Shabott admits that he has no evidence to refute any statement made by Wasson in his affidavit. See Shabott Dep. pp.114-119, 125, 127, 129, 133, 134, 150-151, 153-157, 172-173. It was a "pretty cloudy time and a pretty bad time" for him, and he would "need some sort of document to confirm when things happened" but he does not have the documents. See Shabott Dep. pp.133.

10. Shabott contends that following his test flight on July 13 when he discovered new problems with the plane and his return of the plane that same day to Mercury, he entered into two additional written agreements with Mercury, although he admits he has no copies of these agreements. See Shabott Dep. pp.194-195, 198-201, 216-217, 232-233, 302, 331-339.

11. The first such additional agreement allegedly contains Mercury's promise that, if it were determined that Mercury's repair work had caused the damage which had resulted in the problems Shabott experienced during his test flight, Mercury would pay to repair the plane. See Shabott Dep. pp.190, 194, 216-217, 224-226.

12. Shabott contends this agreement was a one page written document and that he "knows" he received a copy of it, but cannot find it. See Shabott Dep. pp.195, 216-218.

13. Shabott acknowledges that, notwithstanding this agreement, it was his expectation that Mercury would pay for any damage to the plane which it had caused and compensate him for his period of loss of the plane. See Shabott Dep. pp.218-220, 222, 227-229. He wants his plane fixed. See Shabott Dep. pp.188.

14. The second such additional agreement related to the manner in which Mercury would store the plane while it had possession thereof, including, inter alia, provisions that the engines be turned over weekly, that the tires be kept inflated and that fuel be kept in its tanks. See Shabott Dep. pp.199-201, 232, 285-286.

15. Shabott acknowledges that he has not been able to find his copy of this agreement either. Id. They were prepared when he was going through a separation with his wife and his record keeping was slipshod and things got put

in the wrong places and lost sometimes. See Shabott Dep. pp.201-203, 206.

16. Shabott has not, and cannot, allege any consideration given by him to Mercury to support these new written agreements. Rather, they are nothing more than reaffirmations of essential elements implicit in the original repair agreement, to wit, that Mercury would be responsible for any damages it might cause to the plane and, that while the plane was in Mercury's possession it would be stored and maintained in an appropriate manner such that it would not be further damaged. See Shabott Dep. pp.222, 227-228, 237-240, 293-294.

17. Shabott admits that Mercury has never charged him for the storage of his plane and that he has never paid Mercury anything to store it. The only payment he made to Mercury was for the repairs, which he made before the plane was returned to him on July 13, 1998. See Shabott Dep. pp.70, 233, 321-322.

18. On July 14, 2004, Shabott filed his complaint against Mercury for the damage caused by the repairs made on or before July 13, 1998.

>
> DEFENDANT
> MERCURY AIR GROUP, INC.
>
> By its attorneys,
>
> /s/ David C. Aisenberg
> David C. Aisenberg, BBO#545895
> Looney, Cohen, Reagan & Aisenberg LLP
> 109 State Street
> Boston, MA 02109
> (617) 371-1050

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail on 10/31/05.