UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LEON SHABOTT, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 04-11575-JLT |
| v. ) | |
| ) | |
| MERCURY AIR GROUP, INC., ) | |
| ) | |
| Defendant. ) | |

PLAINTIFF LEON SHABOTT'S RESPONSE TO
DEFENDANT MERCURY AIR GROUP, INC.'S MEMORANDUM
IN SUPPORT OF ITS RENEWED MOTION FOR SUMMARY JUDGMENT

Plaintiff Leon Shabott (Shabott) submits his response to the Defendants, Mercury Air Group, Inc's. (Mercury) memorandum of law in support of its renewed motion for summary judgment.

INTRODUCTION

This is a commercial dispute, Which was filed on July 14, 2004, it arises out of faulty repairs made by the Defendant Mercury, the exact dates of which are in dispute.

1

The new contracts that the Plaintiff entered into with the Defendant are valid. The Affidavit of Leon Shabott (previously filed) states the agreements were made and the handwritten records of Michael Wasson support this claim, this is "relevant evidence" as pursuant to Local Rule #401

## FACTS

Shabott Purchased his aircraft for $35,000. SMF #1 Shabott did bring his aircraft to Mercury for and inspection and allowed them to make the repairs recommended to him by Mercury SMF #2.  Except for the records of Michael Wasson, The exact dates are unproven SMF#3.  Mercury did make the repairs they recommended to Shabott SMF#4.  The exact date Mercury returned the Plane is unknown, SMF#5.  The exact date of the test flight is unknown. SMF #6-7.  Shabott did test fly the aircraft and discovered it had problems and retuned it to Mercury the same day. Shabott did not request further repairs. The aircraft motor was shipped by Mercury to an independent expert, not at Shabott's request but as a mutually agreed upon way of determining the cause of the damage by Mercury and Shabott. SMF #6.  Mercury did comply with their agreement to remove the motor and ship it to the independent expert. The exact dates are unknown. SMF #6 Shabott did enter into additional agreements after the aircraft was retuned to mercury SMF#10.  The agreement was that Mercury was to repair the aircraft if the independent expert determined the damage was the fault of Mercury SMF #11.  Shabott states that the agreement was negotiated verbally and a written agreement was drafted, which he did receive a copy SMF #12.  Shabott cannot produce this

2

document to date. SMF #12. Shabott states Mercury agreed to compensate him for any damage caused by them SMF #13. The second agreement was that Mercury would store Shabott's aircraft in a responsible manner, Shabott put his reliance in Mercury, as by that time Mercury was waiting for there insurance company to comply SMF #14. Shabott is unable to produce this written agreement. SMF#15. Shabott states that these additional agreements were entered into in good faith and are valid. Reference to them is contained in the evidence previously submitted by Mercury. SMF#16. Shabott has not paid any storage fees nor has been asked to since the bill was forgiven during a meeting with mercury. SMF #17. On July 14th, 2004 Shabott filed a complaint with this court against Mercury for damages incurred to him from the breach of contracts by Mercury not only from the initial repairs but subsequent agreements. as previously stated. SMF #18.

ARGUMENT

I. Standard

Summary judgment is appropriate where "there is no genuine issue as to any material fact". The court my consider pleadings, depositions, admissions on file and affidavits.

There is no doubt that genuine material facts exist to substantiate the Plaintiffs claims. The argument that the claims are barred by the six year statute of limitations has already been argued by the Defendant and denied by this court.

## II. Mercury Is Not Entitled To Summary Judgment Because All Claims are Not Time Barred By the Applicable Six Year Statute of Limitations.

The complaint states there is multiple causes of action for breaches of contract.

The fundamental issue is when does the cause of action of this contract claim accrue. The law is well defined in Massachusetts. In this case, the cause of action begins when the Plaintiff learns or should have learned that he was injured by the defendants conduct. See Taygeta Corp. vs. Varian Associates, Inc. 437 Mass. 217 (2002).

Shabott states this issue is a triable, jury issue, not an issue for resolution on summary judgment.

"Where compliance with the statute of limitations is at issue, factual disputes concerning when a Plaintiff knew or should have known of his cause of action, are to be resolved by the jury" See Riley vs. Presnell 409 Mass. 239,247 (1991)

Even if the Defendants dates are correct and Shabott did test fly his plane on July 13,1998. He could not have possibly been aware he could have been injured by the defendants conduct until July 14, 1998 when (according to the Defendant) he was notified that there was "metal in the left engine" See affidavit of Michael Wasson #9. Even when Shabott was told this fact by Mercury, Mercury admitted no fault and Shabott was unaware of any possible wrong doing by Mercury. Shabott states he started looking for a replacement motor at his own expense. "Shabott responded that he would look for a used engine to swap out". See affidavit of Michael Wasson #9.

It was not until the report back from the independent expert Aviation Engines was received that the Plaintiff could have known he was injured by the Defendants conduct dated August 12, 1998, within the six year statute of limitations. See affidavit of Michael Wasson #11.

III. Mercury Is Not Entitled to Summary Judgment Because the Discovery Rule Does Apply to Extending the Statute of Limitations.

Shabott did not have access to discover what was causing the engine problem(s) prior to the six years preceding the filing of his complaint. Shabott states even if the Defendants dates are correct and Shabott did test fly his plane on July 13,1998, and that he was told by the Defendant that his motor was internally damaged on July 14, 1998 he is not an aircraft mechanic, Shabott did not have the technical expertise, he could not have possibly been aware Mercury installed the wrong parts. The aircraft was in Mercury's possession. Shabott was reliant on Mercury to make a determination as to what, if anything was wrong with his aircraft. Mercury as well was unable to determine what was the cause of the damage once they discovered it. Shabott states he did not and could not have known he had been injured by the defendants conduct until the report from the investigation of the independent expert Aviation Engines was received.

IV. Mercury Is Not Entitled to Summary Judgment Because the Discovery Rule Applies, and Shabott Did Not Have the Necessary Access More Than Six Years Prior to Filling Suit

5

Shabott States that the argument that Mercury had not "hid the repairs from Shabott" and that "Shabott had continuing access" to discover what the cause of the problem was, is almost frivolous.

The allegation that Shabott had "immediate suspicions that the problem might be Mercury's fault" are unfounded. Shabott again states his immediate response was to seek a replacement engine at his own expense. See affidavit of Michael Wasson #9.

The cause of the damage and fault of Mercury was not knowable until confirmed by the report from the investigation of the independent expert Aviation Engines was received. See affidavit of Michael Wasson #11.

Shabott exercised reasonable diligence in negotiating with Mercury to agree to ship the engine to an independent expert for evaluation.

V. The best Evidence Rule Does Not Preclude Admission of Evidence Regarding the Additional Contracts for Compensation for Damage to and Storage of Shabott's Aircraft.

The continuing agreements stated by Shabott to have been made By Mercury and himself serve as a further basis for the claim(s) against Mercury. Shabott states contracts of this type do not have to be in writing, that the statute of frauds does not apply. The original Documents are probably in the Defendants possession. See Shabott Dep. pp.201.

6

For the first time Mercury is denying the existence of the additional agreement documents, The Affidavit of Mike Wasson States "the engine was shipped at Shabott's request to an outfit in......." Shabott would like to bring to the courts attention that:

1. Mike Wasson told the defendant in a phone call in 2004 that he had recollection of the negotiations between Mercury and Shabott for the inspection of the motor by an independent expert and the storage agreement. Shabott would like to remind the court that Mike Wasson then told Shabott that He, (Wasson) and the ex manager John Wrega, had been "hired by Mercury to help them with there defense of this lawsuit" and he probably could not provide an affidavit when asked to by the Plaintiff, He said we would have to ask John (Wrega).

2. Mercury did not bill Shabott for removal or shipping of Shabott's motor. Mercury previously always demanded immediate payment for services rendered. This action, of not charging, billing or demanding payment from Shabott supports the existence of the agreement Shabott swears under the pains and penalties of perjury was entered into by Mercury and himself.

3. In the handwritten notes of Michael Wasson, reference is made to: 9-4-98 "Andy feels Lycoming should accept some responsibility for this problem. 9-23-98 "I told him everything is in the hands of our insurance people" and 3-30-99 "that we could put his _____ (unreadable) on a tie down spot outside". See Affidavit of Michael Wasson, handwritten notes.

In The Plaintiffs Response to Defendants statement of Undisputed Facts #15 it states that Shabott's copies of these documents could have been taken or lost by the actions of persons other than himself.

Mercury states that "it seems rather odd that Shabott would ask Mercury to sign such documents, without carefully preserving them for use in court" Shabott states that reasonable evidence and testimony exist to support Shabott's claims.

Shabott states the issues the Defendant raises regarding the additional agreements are issues for the trial judge and/or the jury, not issues determinative in a motion for summary judgment.

VI. The Additional Agreements Shabott Entered into After July 13, 1998 Are Enforceable As they Are Not Reiterations Of The Original Contract But Are Separate Contracts Worthy Of Consideration.

Shabott states that Mercury told him they were unable to determine the cause of the problem, That it was "Unknowable" to them, seasoned, FAA certified, aircraft mechanics.
Shabott states that he exercised due diligence and participated in negotiation of a mutual agreement to have the motor evaluated by an independent expert as and action "among reasonable men". Shabott in his affidavit states Mercury demanded payment for their additional work for removal and shipping of the motor if the independent

expert determined the cause of the damage was no fault of mercury's. Shabott also states Mercury promised to "make some type of goodwill compensation for the lost use of the aircraft" If the cause of the damage was found to be the fault of Mercury. See afidavit of Leon shabott #5

The storage agreement was entered into by Shabott at Mercury's request, as they were waiting for their insurance people and requested of Shabott permission to store his aircraft outside. Shabott put his reliance in Mercury to store the aircraft in a manner that was responsible, Shabott could of and should have, insisted his aircraft remain in the maintenance hanger but instead agreed to accommodate Mercury's request under reasonable conditions that Shabott states Mercury agreed to do.

Shabott would like to point out at no time did Mercury state they would not repair Shabott aircraft, that they felt no obligation too, nor did Mercury even notify Shabott that they where selling their Hanscom Field operation, abandoning their stewardship of his aircraft.

## CONCLUSION

Shabott argues that the statute of limitation argument has already been ruled upon and denied by this court. The Defendant has not raised any substantially new or different issues regarding the statute of limitations argument. The "Best Rule of Evidence "argument should not be an issue raised in a motion for summary judgment, especially since the Defendants own evidence helps to support the Plaintiffs claims.

9

For the reasons set forth herein, the Plaintiff Leon Shabott, pro se, respectfully requests this honorable court deny the Defendants Renewed Motion for Summary Judgment and allow all the Plaintiffs claims in this true and valid case to go to trial.

							Plaintiff

							_____
							Leon Shabott, Pro se

							4138 Center Pond Road
							Newark. Vermont, 05871

							Home (802) 723 4448
							Mobile 8023098707