UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

*FILED
IN CLERKS OFFICE

2006 NOV 14 A 9: 03

U.S. DISTRICT COURT
DISTRICT OF MASS.*

LEON SHABOTT
*Plaintiff*

V.

MERCURY AIR GROUP, INC., *et al.*

*Defendants*

**Civil Action No.** 04-11575-JLT

# **APPENDIX**

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF RULE 60(B)
## MOTION FOR RELIEF FROM JUDGMENT

14 November 2006

**Leon Shabott**
4138 Center Pond Road
Newark, VT 05871
Phone: 802.723.4448
Cell: 802.309.8707

## Table of Contents

1.  Complaint in *Shabott v. Mercury Air Group, Inc et al.* of 14 July 2006          1

2.  Affidavit of Michael Wasson with Attached Notes of Michael Wasson          4

3.  Court's 25 January 2006 Order of Dismissal          20

4.  District Court's 8 February 2006 Memorandum in Support of Order of Dismissal 21

5.  District Court's 14 February 2006 Judgment of Dismissal          28

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2004 JUL 14 P 2:36   **ATTACHMENT 1**

U.S. DISTRICT COURT
DISTRICT OF MASS   CIVIL ACTION

NO. _ _ _ _ _

**04   11575  JLT**

Referred to MJ RB Collings

Leon Shabott
4137 Center Pond Road
Newark, Vermont 05871
(802) 723-5487

V.

Mercury Air Group, Inc.
5465 McConnell Avenue
Los Angeles, California 90066
(310) 827-8921

## COMPLAINT

### Parties

1. The plaintiff is a residence of Newark, Caledonia County, Vermont and a citizen of the United States

2. The defendant Mercury Air Group, Inc. is located Los Angeles, Los Angeles County California. Mercury Air Group, Inc. is incorporated in the state of New York

### Jurisdiction

3. The court has jurisdiction over this matter pursuant to 28 U.S.C. 1332

Facts

4. The Plaintiff hangered and ramped his Beechcraft twin bonanza airplane (N3583B) at the Mercury Air FBO at Hanscom Field, Bedford Massachusetts.
The Plaintiff used Mercury Air for storing, fueling and maintenance of his aircraft.

5. In June of 1998 the plaintiff contracted Mercury Air to do routine service his airplane (N3583B). The Mercury Air staff found problems with both of the two motors and performed extensive repairs.

6. Once the repairs were completed and fully paid for Plaintiff test flew his airplane on July 16th 1998. While on the test flight the motors began to show signs of having some problems. The aircraft was able land with rough running motors without incident.

7. The Mercury Air staff after many days discovered that the Hydraulic lifters of the cylinder they replaced had shattered, metal bits were scatted throughout the right motor.

8. The plaintiff negotiated with the manager of the defendant to have the right motor sent to a specialist with the understanding that if the problem was the fault of the defendant that they would repair the faulty motors and make for the lost use of the aircraft. The specialist working with Mercury air staff determined that the wrong hydraulic lifters had been installed. The wrong size parts hammered the pushrods and caused the lifters to shatter in flight resulting in extensive damage. The left motor also had the wrong lifters installed. This fact was related to the plaintiff by both the defendant and the specialist.

9. Mercury Air agreed to hanger the aircraft while it was investigating the cause of the damage to the motor(s).

10. Mercury Air asked the Plaintiff if it could store the aircraft outside on the ramp. The plaintiff agreed as long as the rudder wind lock was kept engaged. The rudder lock is engaged by keeping the nose wheel turned to the left most position.

11. In September of 2001 the plaintiff discovered the rudder had been bent and broken. The rudder lock had not been engaged. This was admitted by the Mercury Air staff with apologies to the plaintiff.

12. As of today the aircraft remains at Hanscom field its right motor removed and its rudder damaged. Mercury Air has sold its Hanscom field operations to another company.

13. The plaintiff demands that his aircraft be returned to flyable condition with both motors overhauled, the damaged airframe repaired and the aircraft working properly, as it was when it was entrusted to the defendant.
The plaintiff demands any storage charges accrued be paid.

14. WHERFORE, the Plaintiff demands judgment against the defendant for damages and such other relief as this court deems just.

15. The plaintiff requests a trial by Jury.

Signature

Leon Shabott    PRO SE

4137 Center Pond Road
Newark, Vermont 05871
(802) 723-5487

SCANNED
DATE: 9/10/06
BY: M.P.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
LEON SHABOTT,                   )
                                )
        Plaintiff,              )
                                )
v.                              )
                                ) CIVIL ACTION No.04-11575-JLT
MERCURY AIR GROUP, INC.,        ) Referred to Magistrate Judge RBC
                                )
        Defendant.              )
_____     )

## AFFIDAVIT OF MICHAEL WASSON

I, Michael Wasson, under oath, depose and state:

1.    I was formerly employed by the defendant Mercury
Air Group, Inc. ("Mercury") as its service coordinator.  I
currently reside at 111 Pheasant Road, Billerica,
Massachusetts.

2.    I have been asked by the attorneys for Mercury to
submit this affidavit in connection with a motion for
summary judgment to be filed by Mercury.  I have personal
knowledge of the facts contained herein and if called to
testify at trial I would testify to same.

3.    I was the service coordinator for Mercury at its
facility in Bedford, Massachusetts, from April 1997 until
June 2002.

4.    During that time, I had occasion to coordinate the
service of a Beechcraft twin bonanza airplane ("Airplane")
owned by Leon Shabott ("Shabott").  I maintained
contemporaneous records of my communications with respect to
the Airplane.  Copies of my handwritten and typed notes are

1



attached hereto. I have reviewed those notes in connection with preparing this Affidavit.

5. On or about June 24, 1998, Shabott dropped his Airplane off at Mercury for service.

6. Mercury made some repairs to the Airplane, including the installation of hydraulic lifters in both engines. The repairs were made based on consultation with the manufacturer of the engine parts.

7. Mercury returned the Airplane to Shabott on or before July 13, 1998.

8. On July 13, 1998, Shabott again returned the Airplane to Mercury for further service. At this time, Mercury discovered that there was metal in the left engine.

9. On July 14, 1998, I notified Shabott that metal was found in the left engine and that repairs were necessary. Shabott responded that he would look for a used engine to swap-out. Shabott stated that he would get back to me by the end of that week.

10. Subsequently, the engine was shipped at Shabott's request to an outfit in Centreville, Alabama, named Aviation Engines, Inc. ("Aviation Engines"), for further inspection.

11. Over the next few weeks, Aviation Engines examined the engine and determined that the metal in the engine was caused, in part, by the repairs to the hydraulic lifters made by Mercury in June 1998.

2



12.  In August 1998, Aviation Engines provided an estimate of $17,156.79 to repair the damaged left engine.

13.  As Mercury made the same repairs to the right engine that it made to the left engine in June 1998, there may be a need to replace both engines.  Therefore, the total cost to repair the engines would be approximately $35,000 based on the estimate of Aviation Engines.

14.  In September 1999, Shabott told me that he had purchased the Airplane for $45,000.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY, this 7 day of December 2004.

_____

Michael Wasson
111 Pheasant Road
Billerica, MA 01821

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the
above document was served upon the
attorney of record for each other party
by mail-hand on 12/8/4

3

7-13-98    Found metal in RBC while T.Shooting EGT problem. HYDRAULIC TAPPET BODY BROKEN.

MATTITUCK (MAHLON) said original "flat" tappets probably caused by not enough use. 800 hrs in 18 years.

ENGINE CASES MUST be SPLIT TO REPLACE TAPPET bodies - MATTITUCK 6500⁰⁰. 7½ weeks ATLANTIC AIRCRAFT ENGINE 6250⁰⁰ 3½ weeks both OVH shops quoted Labor only - ADDITIONAL FOR PARTS, GASKETS, seals, etc.

▬▬▬▬▬▬▬▬▬▬▬ He told Bill he was going to "shop Around" for another OVH SHOP and would get back to us.

7-14-98    owner is looking for a used engine to SWAP-OUT. He will let us Know by the end of this week @ 7-17-98.

7-30-98    SHIPPED ENGINE TO AVIATION ENGINES FOR REPAIR PER CUSTOMER.

8-5-98    ENGINE ARRIVED SAFELY PER PAM AT AVIATIONS ENGINES

8-13-98    FAX FROM ENGINE SHOP - INDICATING MIXING OF NEW STYLE AND OLD STYLE PARTS IN ENGINE. (NO INFO FROM LYCO CUSTOMER SERVICE WHEN THEY SUPERCEDED THE LIFTER PART NUMBER 73062 WAS NOT AVAILABLE, or even listed IN DISTRIBUTORS data bases. I called Lyco customer SERVICE 6-24-98 she said to use 78290. Which we bought from Aircraft.

8-19-98 (09:00)    Mike Calbera AT Lyco - GO.480.F4A6 ENGINE USES LIFTER O/N 78290 PER S.I. 1011 H - IT DOESN'T

GO-480-F4A6

8-19-98   INSTALLED IN ENGINE. "AVIATION ENGINES should READ the service instruction before they make ANY MORE comments."

8-19-98   LEON Shabbot SAYS ENGINE shop TOLD HIM THIS WAS our FAULT. HE WANTS TO KNOW who is going to pay for this REpair before engine shop TEARS down engine.

8-19-98   AVIATION ENGINES   205-926-5186   (PAM) will fax estimate to me. Per PAM if using a 480 parts book we used the correct lifter – but if YOU'RE experienced with 480's you'll KNOW that they are incompatible because OF different bleed down RATES. – Estimate for TEAR down REpair & REAssemble will be faxed shortly.

8-20-98   @ LYCO 12 years
Jim MATTHEWS – LIFTER DOESN'T MATTER – BUT IF YOU REPLACE ANY LIFTERS WITH NEW STYLE YOU SHOULD REPLACE ALL LIFTERS WITH NEW STYLE. (PN 78290) OTHERWISE due to different bleed down RAT ENGINE WILL RUN ERRATICALLY – BUT THIS WILL NOT CAUSE TAPPET BODIES TO BREAK.

8-27-98   Leon called wants to know what we are going to pay for. Now he said metal in engine scored the crankshaft.

8-27-98   Per J.W. based on our investigation damaged tappet bodies were not caused by anything we did.

8-27-98    LEON WANTS A MEETING WITH JOHN WRAGA — TO DETERMINE WHAT WE ARE GOING TO PAY FOR. LEON SAID HE HAS A LETTER FROM LYCOMING STATING LIFTERS WILL CAUSE TAPPET BODIES TO BREAK. HE WOULD NOT FAX ME A COPY OF THAT LETTER. ALSO STATED RT ENGINE IS RUNNING FUNNY. LEON STATED THAT HE WANTS TO REMAIN AS AMMIABLE AS possible.

8-27-98    I called Jim MATTHEWS AT Lyco. I ASKED FOR A COPY OF LETTER TO LEON. Jim was UNAWARE OF ANY such letter and would be very interested to See IT. FIND OUT WHO SIGNED IT SO AND HE CAN GET CONFIRMATION FROM THAT PERSON

8-27-98    Called Leon and scheduled meeting for 11:00 AM monday (8-31-98) morning. Leon seems confident THAT WE CAN GET THIS WORKED OUT.

8-31-98    LEON MEETING, JOHN WRAGA, MYSELF & BILL YOUNG BEGAN AT NOON. LEON PRESENTED LETTER FROM LYCOMING (Robert OHNMEISS) TO AVIATION ENGINES (DON FREEMAN) Agreeing WITH DON FREEMAN'S OPINION THAT NEW STYLE LIFTERS P/N 78290 Did cause breakage. I FAXED THE LETTER TO Jim MATTHEWS AT LYCO. I ASKED Jim MATTHEWS TO LOOK INTO THE Possibility OF SENDING HIS S.E. Regional SERVICE REP TO Aviation Engines TO GET A FIRST HAND LOOK AT broken LIFTER BODIES.



9-9-98    called Jim Matthews at Lyco.
717-323-6181 X 7096. Left message
for him to call back. we need to
know if he has contacted Robert
Ohnmeiss about Leon's letter.

9-10-98    called Jim Matthews at Lyco. he spoke
briefly to Robert OHNMEISS and confirmed
his Bob Ohnmeiss opinion that the
new style lifters will cause erratic
engine running and Hydraulic lifter
body breakage. Jim disagrees with
Bob but admits that Bob has 4
times more experience. Jim is very
reluctant to say anything more,
"He doesn't want to end up in the
middle of something." I asked for
something in writing clarifying Lyco's
opinion and was advised to talk
to Sharon the engineering secretary.
I left a message on Sharon's
voice mail and am awaiting a
call back.

9-10-98    Called Leon - he wanted to talk to
Jim Matthews at Lycoming - So I
left Jim's name & phone number
with extension on Leon's voice mail.
He was on the road so he could
not write it down.

K2096  Jim Matt. Hews

8-31-98    called Jim Brooks Lyco Regional Manager.
He'll call Jim Matthews and confer with
Him before committing to come and
look at RIGHT ENGINE.

8-31-98    AVIATION ENGINES — DON FREEMAN — CRANKSHAFT
IS scored but IT will polish out. MAGNA-
FLUXING OF OTHER ENGINE PARTS SHOWS
NO DAMAGE — Don would NOT be AT ALL
APPREHENSIVE TO PUT THIS ENGINE BACK
TOGETHER AND RETURN TO SERVICE.

8-31-98    Jim Brooks called. He is not going to come out. He
MUST PULL 3 CYLINDERS ON ONE SIDE AND
INSPECT WITH A LIGHT & MIRROR — YOU can
SEE ALL OF THEM. AFTER BODIES, SB 1011 H — SI 1182A
OK TO REPLACE RT ENG LIFTERS WITH OLD STYLE IF BODIES ARE OK.

8-31-98    Bill Y. above proccedure NOT NECESSARY Just pull Push Rod
Tubes and look at LIFTER BODIES.

9-1-98    called Jim MATTHEWS LEFT MESSAGE FOR
HIM TO CALL ME BACK — ANY FEEDBACK ON
ROBERT OHNMEISS LETTER THAT I FAXED Jim
Yesterday.

9-1-98  ✓ Jim MATTHEWS called — Robert OHNMEISS WAS
RECENTLY TRANSFERRED TO ACCIDENT INVESTIGATION
AND IS "TIED UP" WITH THE FAA SO HE COULD NOT
BE REACHED. FOR COMMENT. SEE SB 1182A FOR
INFO ON CAM & ROCKER ARMS. HE WILL CALL BACK
AFTER CONTACTING Robert OHNMEISS.

9-4-98    Telecon — JOHN WRAGH, myself & Andy FAIRFAX.
Andy Feels Lycoming should ACCEPT some
responsibility for this problem.



9-10-98    Charlie Anstadt - Lyco engineer called - said he has no experience mixing old & new style components - but feels that it would only cause rough running at idle. Maybe with the wrong combination of camshaft - lifters and rocker arms you would get the right valve train dynamics to cause breakage.

If there was any rust in the bores of the old hydraulic lifter bodies, the bores would wear oblong - then when installing a new lifter (full size perfectly round) it is only supported on two sides - ask engine shop to measure bore diameters for uneven wear.

9-11-98    Jim Matthews at Lyco called. He had a conference call with Leon Shabot, Don Freeman (Aviation Engines), Robert Ohrmeiss and Charlie Anstadt. Engine was overhauled in 1981 with wrong tappet bodies (P/N 72877 straight cast iron), wrong camshaft PN 71305 and wrong rocker arms P.N. 67113 intake and PN 67112 exhaust. Service instruction 1182 revision A from 1978 says to replace camshaft and rocker arms at overhaul. The engine should have steel hyperbolic bodies P/N 73061 or P/N 15B21318 not P/N 72877 which are cast iron straight bodies. Lyco cannot positively say what caused damage but they suspect excessive valve clearance caused by combination of wrong parts.



write us a letter. Leon agreed that we could put his acft on a tie down spot outside.

6-99   Leon dropped off an engine that he sourced from Broward County, Fla. Sheriff's Dept. (Abandoned drug running aircraft left in field) w/ log books. We told him that we would not install that engine but we would store it for him.

9-1-99   Leon dropped by and met with Greg Cadieux – (Twin Bonanza collector/Broker) Leon MIGHT SELL ACFT AT A "FIRE SALE" Price. but THINKS HE WILL REGRET IT LATER. ("his ACFT is a loose end in his life that needs to be cleaned up but also his only asset." He SAYS he bought the ACFT FOR $45K. He will call John Wraga in AM. 9-2-89

14

9·23·98  @ 2:30 Leon called to see if there
was any news. I told him
everything was in the hands of
our insurance people.

10-7-98  Leon called - he talked to Jim Matthews
at Lycoming and after talking to
Leon "Jim "backed-off" about wrong
parts in engine since overhaul I.E.
camshaft, rocker arms etc causing
damage. Leon wants this to move
forward. Engine shop needs space
wants to get his engine out and
he is still driving to Vermont. He
is going to call Lyco again and
he will keep me informed.

10/28/98  Leon called - wondering about his airplane.
I told him that we haven't done
anything with it since turning the
info over to Mercury's insurance
guy. He has a call into Lycoming's
Jim Matthews but has not got
a response yet. He will call
John Wraga and ask him if he
can call Andy Fairfax direct to
expedite the situation.

3/30/99  John Wraga - Leon Shabbot & myself had
meeting - Leon was very stressed. Had
business & family problems. commuting
by car to Watertown Ma. from Chelsea
Vt. He asked me not to charge service
fees - tie down - storage etc. to, which

**06-24-98**  LEON SHABOTT DROPPED OFF HIS BEECHCRAFT TWIN BONANZA
FOR SERVICE. WE COMPLIED WITH A COMPRESSION CHECK ON
BOTH ENGINES AND FOUND RIGHT ENGINE CYLINDER #1 AND LEFT
ENGINE CYLINDER #2 BAD. REMOVED BAD CYLINDERS AND SENT TO
MATTITUCK AIRBASE FOR REPAIR. MATTITUCK REPAIRED ONE
CYLINDER AND REPLACED THE OTHER WITH AN EXCHANGE UNIT.
WHILE TROUBLESHOOTING LOW COMPRESSION PROBLEM IT WAS
FOUND TO HAVE FOUR FLAT LIFTERS P/N 73062. WHEN TRYING TO
ORDER THAT PART NUMBER NO LYCOMING DISTRIBUTORS HAD ANY
RECORD OF THAT NUMBER ON FILE. CONTACTED LYCOMING CUSTOMER
SERVICE AND WAS TOLD TO USE PART NUMBER 78290. NO MENTION
WAS MADE OF POTENTIAL PROBLEMS WITH MIXING OLD AND NEW
STYLE LIFTERS. NOR WERE WE TOLD THAT WE HAD TO CHANGE ALL
LIFTERS TO NEW STYLE. NO SERVICE BULLETINS OR INSTRUCTIONS
WERE REFERENCED. FOUR EACH PART NUMBER 78290 WERE
PURCHASED FROM AVIALL ON PURCHASE ORDER NUMBER 091435.
THESE NEW STYLE LIFTERS WERE INSTALLED WITH SERVICABLE
CYLINDERS FROM MATTITUCK AIRBASE.



**07-13-98**  FOUND METAL IN LEFT ENGINE #1 CYLINDER ROCKERBOX COVER WHILE TROUBLESHOOTING E.G.T.  REMOVED CYLINDER ASSEMBLY AND FOUND HYDRAULIC TAPPET BODY BROKEN.  CALLED MATTITUCK AIRBASE ENGINE OVERHAUL SHOP AND SPOKE TO MAHLON.  HE SUSPECTED FLAT TAPPETS WERE CAUSED BY NOT ENOUGH USE. @ 800 HOURS IN 18 YEARS.  ENGINE CRANKCASE MUST BE SPLIT TO REPLACE TAPPET BODIES. MATTITUCK QUOTED $6500.00 AND 7 ½ WEEKS DELIVERY.  OBTAINED SECOND QUOTE FROM ATLANTIC AIRCRAFT ENGINES. $6250.00 AND 3 ½ WEEKS DELIVERY.  BOTH OVERHAUL SHOPS QUOTED LABOR ONLY ALL PARTS, GASKETS, SEALS, ETC. ARE AT ADDITIONAL COST.

**07-14-98**  NOTIFIED OWNER OF PROBLEM. HE TOLD BILL YOUNG THAT HE WAS GOING TO SHOP AROUND FOR ANOTHER OVERHAUL SHOP AND WOULD GET BACK TO US.

**07-14-98**  OWNER IS LOOKING FOR A USED ENGINE TO SWAP-OUT.  HE WILL LET US KNOW BY THE END OF THE WEEK.

**07-30-98**  SHIPPED ENGINE TO AVIATION ENGINES FOR REPAIR PER CUSTOMER REQUEST.

**08-05-98**  ENGINE ARRIVED SAFELY PER PAM AT AVIATION ENGINES.

**08-13-98**  RECEIVED FAX FROM AVIATION ENGINES INDICATING THAT PROBLEM COULD HAVE BEEN CAUSED BY MIXING OF OLD AND NEW STYLE PARTS IN VALVE TRAIN. PART NUMBER FOR OLD STYLE LIFTER 73062 WAS NOT AVAILABLE, OR EVEN LISTED IN DISTRIBUTORS DATA BASE NETWORKS. I CALLED LYCOMING CUSTOMER SERVICE ON 06-24-98 BEFORE ORDERING THE PARTS AND WAS ADVISED TO USE PART NUMBER 78290. NO MENTION WAS MADE OF POTENTIAL PROBLEM OF OLD AND NEW STYLE PARTS. ORDERED LIFTER PART NUMBER 78290 FROM AVIALL.

**08-19-98**  SPOKE TO MIKE CALBERA AT LYCOMING.  HE VERIFIED THAT A GO-480-F4A6 USES LIFTER PART NUMBER 78290 PER SERVICE INSTRUCTION 1011H. HE FURTHER STATED THAT IT DOESN'T MATTER WHAT LIFTER BODY, HYPERBOLIC OR STRAIGHT, IS INSTALLED IN ENGINE. AND "AVIATION ENGINES SHOULD READ THE SERVICE INSTRUCTION BEFORE THEY MAKE ANY MORE COMMENTS."

**08-19-98**  LEON SHABOTT SAID THE ENGINE SHOP SAID THIS BREAKAGE WAS OUR FAULT.  HE WANTS TO KNOW WHO IS GOING TO PAY FOR THE REPAIR BEFORE ENGINE SHOP PROCEEDS.

**08-19-98**  PAM AT AVIATION ENGINES SAID IF WE WERE LOOKING IN THE 480 PARTS BOOK THEN WE USED THE RIGHT LIFTER BUT IF YOU'RE EXPERIENCED WITH 480S YOU'LL KNOW THAT THEY ARE INCOMPATIBLE BECAUSE OF DIFFERENT BLEED DOWN RATES.  SHE WILL FAX AN ESTIMATE FOR TEAR-DOWN, DAMAGE REPAIR AND REASSEMBLE ONLY.

**08-20-98**  JIM MATTHEWS AT LYCOMING (12 YEARS) REAFFIRMED THAT LIFTER STYLE DOES NOT MATTER.  BUT IF YOU REPLACE ANY LIFTERS WITH NEW STYLE YOU SHOULD REPLACE ALL LIFTERS WITH NEW STYLE OTHERWISE ENGINE MIGHT RUN ERRATICALLY DUE TO DIFFERENT BLEED DOWN RATES.  **BUT THIS WILL NOT CAUSE TAPPET BODIES TO BREAK.**



**08-27-98** LEON CALLED TO FIND OUT WHAT WE ARE GOING TO PAY FOR. HE SAID METAL IN ENGINE SCORED CRANKSHAFT. HE HAS A LETTER FROM LYCOMING STATING THAT NEW STYLE LIFTERS WILL CAUSE TAPPET BODIES TO BREAK. HE WOULD NOT FAX ME A COPY OF THAT LETTER. HE SAID RIGHT ENGINE WAS RUNNING "FUNNY" WHEN HE BROUGHT IT IN. HE WANTS TO REMAIN AS AMMIABLE AS POSSIBLE. HE IS VERY ANXIOUS TO GET THE AIRPLANE FIXED.

**08-27-98** I CALLED JIM MATTHEWS AT LYCOMING. I ASKED HIM TO FAX ME A COPY OF LEON'S LETTER STATING NEW STYLE LIFTERS WILL BREAK TAPPET BODIES. JIM WAS UNAWARE OF ANY SUCH LETTER AND SAID THAT HE WOULD BE VERY INTERESTED TO SEE IT. HE ASKED ME TO FIND OUT WHO SIGNED IT SO HE CAN GET CONFIRMATION FROM THAT PERSON.

**08-27-98** I CALLED LEON AND SCHEDULED A MEETING FOR 11:00 AM MONDAY (08-31-98). LEON EXPRESSED CONFIDENCE IN BEING ABLE TO GET THIS WORKED OUT.

**08-31-98** LEON CALLED TO ADVISE THAT HE WILL BE LATE. RESCHEDULED MEETING FOR NOON.

**08-31-98** JOHN WRAGA, BILL YOUNG AND MYSELF MET WITH LEON SHABBOT. LEON PRESENTED LETTER FROM LYCOMING (WRITTEN BY ROBERT OHNMEISS) TO DON FREEMAN AT AVIATION ENGINES BASICALLY AGREEING WITH DON'S OPINION THAT MIXING OF OLD AND NEW STYLE LIFTERS WILL CAUSE HYDRAULIC LIFTER BODIES TO BREAK. I FAXED A COPY OF THIS LETTER TO JIM MATTHEWS AT LYCOMING. I ASKED JIM TO LOOK INTO THE POSSIBILITY OF SENDING HIS SOUTHEAST REGIONAL SERVICE REP TO AVIATION ENGINES TO GET A FIRST HAND LOOK AT THE BROKEN LIFTER BODIES.

**08-31-98** I CALLED JIM BROOKS (LYCOMING REGIONAL MANAGER). HE'LL CALL JIM MATTHEWS AND CONFER WITH HIM BEFORE COMMITTING TO COME OUT AND LOOK AT RIGHT ENGINE.

**08-31-98** I CALLED DON FREEMAN AT AVIATION ENGINES HE SAID THAT THE CRANKSHAFT IS SCORED BUT IT WILL POLISH OUT. MAGNAFLUXING OF OTHER ENGINE COMPONENTS SHOWS NO DAMAGE. DON WILL NOT BE AT ALL APPREHENSIVE TO PUT THIS ENGINE BACK TOGETHER AND RETURN TO SERVICE. HE WILL SEND US TWO EACH OLD STYLE LIFTERS TO USE AS REPLACEMENTS IN RIGHT ENGINE.

**08-31-98** JIM BROOKS CALLED. HE IS NOT GOING TO COME OUT. HE SUGGESTED WE PULL 3 CYLINDERS OFF ONE SIDE OF RIGHT ENGINE TO INSPECT ALL HYDRAULIC LIFTER BODIES FOR DAMAGE BEFORE REPLACING THE TWO NEW STYLE LIFTERS WITH OLD STYLE LIFTERS. THIS CAN BE ACCOMPLISHED WITH A LIGHT AND MIRROR ONCE THE CYLINDERS ARE REMOVED. REMOVING THE TWO NEW STYLE LIFTERS AND REPLACING WITH OLD STYLE IS OK AS LONG AS THE HYDRAULIC LIFTER BODIES ARE NOT DAMAGED. SEE SB1011H AND SI1182A.



**08-31-98**  BILL YOUNG SAID REMOVAL OF THREE CYLINDERS IS NOT NECESSARY.
HE CAN INSPECT HYDRAULIC LIFTER BODIES IN QUESTION BY PULLING
PUSH ROD TUBES.

**09-01-98**  I CALLED JIM MATTHEWS AT LYCOMING.  LEFT A VOICE MAIL MESSAGE
FOR HIM TO CALL ME BACK WITH ANY WORD ON THE ROBERT OHNMEISS
LETTER THAT I FAXED TO HIM.

**09-01-98**  JIM MATTHEWS CALLED.  ROBERT OHNMEISS WAS RECENTLY  TRANS-
FERRED TO ACCIDENT INVESTIGATION AND IS "TIED UP" WITH THE FAA
SO HE COULD NOT BE REACHED:FOR COMMENT.  SEE SB1182A FOR INFO
ON CAM AND ROCKERARMS.  JIM WILL CALL BACK AFTER CONTACTING
ROBERT OHNMEISS.



## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LEON SHABOTT, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| MERCURY AIR GROUP, INC., | * | Civil Action No. 04-11575-JLT |
| | * | |
| Defendant. | * | |

### ORDER

January 25, 2006

TAURO, J.

This court hereby orders that:

1.    Defendant's <u>Motion for Summary Judgment</u> [#45] is ALLOWED.


A MEMORANDUM WILL ISSUE.


      /s/ Joseph L. Tauro
United States District Judge

**16**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LEON SHABOTT, | * |
|  | * |
|  | * |
| Plaintiff, | * |
|  | * |
| v. | *    Civil Action No. 04-11575-JLT |
|  | * |
| MERCURY AIR GROUP, INC., | * |
|  | * |
| Defendant. | * |

## MEMORANDUM

February 8, 2006

TAURO, J.

        Plaintiff, Leon Shabott, ("Shabott") alleges that Defendant, Mercury Air Group, Inc.,

("Mercury Air") breached multiple contracts when it failed to properly repair and store his

airplane. Mercury Air has moved for summary judgment. For the reasons set forth below, that

motion is ALLOWED.

### Background

        Mercury Air, located in Los Angeles, California, is a company engaged, at least in part, in

the business of airplane repair.[1]  Shabott is an individual who resides in Newark, Vermont and

who regularly stored his airplane with Mercury Air in Bedford, Massachusetts. On June 24, 1998,

Shabott brought his airplane to Mercury Air for an inspection and routine maintenance. Mercury

───────────────

        [1] The following facts are drawn from Pl.'s Comp., Def.'s Mem. in Supp. of Def.'s Mot.
for Summ. J., Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s Mot. for Summ.
J., Pl.'s Mem. of Law in Opp. to Def.'s Mot. for Summ. J., Pl.'s Resp. to Def.'s Statement of
Undisputed Material Facts in Supp. of Def.'s Mot. for Summ. J., and the evidentiary materials
submitted in support.

22

Air subsequently installed hydraulic filters in both engines and returned the airplane to Shabott on

or before July 13, 1998.[2] Shabott flew his airplane that same day, but discovered further

problems and immediately returned his airplane to Mercury Air.[3] Upon inspection, Mercury Air

found metal in the airplane's engine. The following day, Mercury Air notified Shabott of this

problem and shipped the engine to Aviation Engines, Inc. ("Aviation") for further inspection. On

August 12, 1998, Aviation reported that the airplane's engine problem likely arose from the

repairs Mercury Air performed to its hydraulic filters.

In addition to the abovementioned service contract,[4] Shabott alleges that he and Mercury

Air entered into, and that Mercury Air breached, two additional written contracts. The first

alleged agreement stated, in part, that if Aviation determined that Mercury Air had caused the

problems to Shabott's airplane, Mercury Air would pay for the necessary repairs. The second

alleged agreement stated that Mercury Air would store Shabott's plane in a specified manner so

that the airplane would not incur any further damage. Shabott has not produced a copy of, and

Mercury Air did not receive anything in exchange for, either alleged agreement. Mercury Air

states that the additional agreements, if they ever existed, are merely the reiteration of terms

implicit in the original service contract and are unenforceable.

On July 14, 2004, Shabott filed his Complaint against Mercury Air alleging breach of

---

[2] Although Shabott appears to dispute that July 13, 1998 is the date on which Mercury Air returned the airplane to him, he has provided no evidence to the contrary.

[3] Although Shabott appears to dispute that July 13, 1998 is the date on which he returned his airplane to Mercury Air, he has provided no evidence to the contrary.

[4] This contract refers to the contract between Mercury Air and Shabott for the original repair of Shabott's airplane, hereinafter "the original service contract."

contract for the damage to his airplane. Mercury Air has moved for Summary Judgment in its favor alleging that Shabott's claims are barred by the statute of limitations.

## Discussion

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if the record reveals that there is "no genuine issue as to any material fact and . . . the moving party [has demonstrated an] entitle[ment] to a judgment as a matter of law."[5] Pursuant to this standard, the "'party seeking summary judgment [must] make a preliminary showing that no genuine issue of material fact exists. Once the movant has made this showing, the nonmovant must contradict . . . [it] by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue.'"[6]

In deciding whether to allow a motion for summary judgment, a court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor."[7] But, a court "need not credit 'conclusory allegations, improbable inferences, and unsupported speculation.'"[8]

When a claim is barred by the statute of limitations, it is proper to grant summary

---

[5] Fed. R. Civ. P. 56(c); Blackie v. Maine, 75 F.3d 716, 721 (1st Cir. 1996) ("[Under] . . . Rule 56, 'genuine' connotes that the evidence on the point is such that a reasonable jury, drawing favorable inferences, could resolve the fact in the manner urged by the nonmoving party, and 'material' connotes that a contested fact has the potential to alter the outcome of the suit under the governing law if the controversy over it is resolved satisfactorily to the nonmovant.").

[6] Blackie, 75 F.3d at 721 (quoting Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995), cert. denied, 515 U.S. 1103 (1995)).

[7] Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

[8] Bloomfield v. Bernardi Automall Trust, 170 F. Supp. 2d 36, 40 (D. Mass. 2001) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

3

judgment in favor of the defendant.[9] In Massachusetts, breach of contract actions are governed by a six-year statute of limitations.[10] The statute of limitations begins to run on the date the cause of action accrues,[11] which generally occurs at the time of the breach.[12] The Massachusetts discovery rule, however, can delay the accrual of a cause of action.[13] Under this common law doctrine, a cause of action accrues when the plaintiff actually knows or should have known of the facts giving rise to his claim.[14]

This court views Shabott's claims against Mercury Air as a breach of the original service contract. While Shabott alleges that Mercury Air breached two additional written contracts, he has failed to present sufficient evidence that these other contracts exist or that they are enforceable. Shabott's cause of action therefore accrues from the date Mercury Air allegedly breached the original service contract.[15]

---

[9] See, e.g., The Saenger Org., Inc. v. Nationwide Ins. Licensing Assocs., Inc., 119 F.3d 55, 64 (1st Cir. 1997).

[10] Mass. Gen. Laws ch. 260, § 2.

[11] Id.; see also Fall River Hous. Auth. v. H.V. Collins Co., 604 N.E.2d 1310, 1314 (Mass. 1992).

[12] The Saenger Org., Inc., 119 F.3d at 64.

[13] Id.

[14] Catrone v. Thoroughbred Racing Ass'ns of N. Am., Inc., 929 F.2d 881, 885 (1st Cir. 1991) ("Under the Massachusetts discovery rule, the running of the statute of limitations is delayed while 'the facts,' as distinguished from the 'legal theory for the cause of action,' remain 'inherently unknowable' to the injured party." (citing Gore v. Daniel O'Connell's Sons, Inc., 461 N.E.2d 256, 259 (Mass. App. Ct. 1984))); see also Williams v. Ely, 668 N.E.2d 799, 804 n. 7 (Mass. 1996) (indicating that the "inherently unknowable" standard is no different than the "knew or should have known" standard.); Riley v. Presnell, 565 N.E.2d 780, 785 (Mass. 1991).

[15] See The Saenger Org., Inc., 119 F.3d at 64.

4

This court finds that Mercury Air's breach, if any, occurred on or before July 13, 1998.

Shabott brought his airplane to Mercury Air on June 24, 1998 for repairs under the original

service contract, and returned to Mercury Air again with his airplane on July 13, 1998.  At some

point between June 24, 1998 and July 13, 1998, Shabott must have retrieved his airplane from

Mercury Air and discovered the damage upon which his current claims are based.[16]  Mercury

Air's alleged breach, therefore, occurred no later than July 13, 1998, at which time the statute of

limitations began to run.[17]  In order to state a timely claim, Shabott must have filed a complaint by

July 13, 2004.[18]  Because Shabott filed his complaint on July 14, 2004, his breach of contract

claims are time-barred.

Finally, the Massachusetts discovery rule does not save Shabott's claims.  While Shabott

may not have been aware of the exact damage, he discovered further problems with his airplane

*after* Mercury Air performed service on it, and he returned it to Mercury Air with these concerns,

on July 13, 1998.  Applying the discovery rule, therefore, the statute of limitations still runs from

July 13, 1998. On this date "a reasonably prudent person in the plaintiff's position, 'reacting to

any suspicious circumstances of which he might have been aware,' would have discovered that

another party might be liable for [his] injury."[19]  Because Shabott was put on notice of a potential

---

[16] While Shabott may not have discovered the exact damage from which his airplane suffered, he noticed problems with the airplane significant enough for him to return it to Mercury Air and discuss how they would proceed.

[17] See The Saenger Org., Inc., 119 F.3d at 64.

[18] See Mass. Gen. Laws ch. 260, § 2 (stating that breach of contract claims are governed by a six-year statute of limitations).

[19] See Bernier v. The Upjohn Co., 144 F.3d 178, 180 (1st Cir. 1998) (quoting Malapanis v. Shirazi, 487 N.E.2d 533, 537 (Mass. App. Ct. 1986)).



claim on July 13, 1998, the discovery rule does not extend the statute of limitations for his cause of action.[20]  Shabott's claims are therefore time-barred.

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is ALLOWED.

AN ORDER (COPY ATTACHED) ISSUED ON JANUARY 25, 2006.

                                    /s/ Joseph L. Tauro
                                    United States District Judge

---

[20] See id.; see also Coady v. Marvin Lumber and Cedar Co., 167 F. Supp. 2d 166, 172 (D. Mass. 2001).

6



## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**LEON SHABOTT,**
       **Plaintiff**

    **V.**

**MERCURY AIR GROUP, INC.,**
       **Defendant.**

**CIVIL ACTION**

**NO.  04-11575-JLT**

FILED IN CLERKS OFFICE
US COURT OF APPEALS
FOR THE...
2006 APR -3  A  9: 01

### JUDGMENT

**TAURO,   D. J.**

In accordance with the Court's Memorandum and Order dated **February 8, 2006**
granting   **Defendant's**   motion for summary judgment in the above-entitled
action, it is hereby ORDERED:

      Judgment for the   **DEFENDANT.**

                    **By the Court,**

                    **/s/**
**February 14, 2006**              **Zita Lovett,**
       **Date**                 **Deputy Clerk**

(Judgmnt1.frm - 09/92)                                          [jgm.]