UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LEON SHABOTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) CIVIL ACTION No.04-11575-JLT | |
| MERCURY AIR GROUP, INC., ) Referred to Magistrate Judge RBC | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT MERCURY AIR GROUP, INC.'S OPPOSITION TO
PLAINTIFF'S MOTION PURSUANT TO RULE 60(b)**

From the day the plaintiff Leon Shabott ("Shabott") filed this case on July 14, 2004, the parties have been litigating whether Shabott's breach of contract claims for the repair of his airplane arose on or before July 13, 1998. Both parties exchanged their automatic disclosure documents and the plaintiff was deposed on three separate days. At the close of discovery, on October 31, 2005 (fifteen months after suit was filed), the defendant Mercury Air Group, Inc. ("Mercury") moved for summary judgment on statute of limitations grounds, claiming that the suit filed on July 14, 2004 was barred because it was filed more than six years after the cause of action arose. In its memorandum allowing the motion for summary judgment, the Court (Tauro, J.) expressly found that "[a]lthough Shabott appears to dispute that July 13, 1998 is the date on which Mercury Air returned the airplane to him, he has provided no evidence to the contrary." The memorandum is dated February 8, 2006. Nine

1

months later, on November 14, 2006, Shabott filed his motion pursuant to Fed. R. Civ. P. 60(b) ("Rule 60(b)") seeking relief from the Court's judgment on the grounds of (1) excusable neglect; (2) newly discovered evidence; and (3) fraud, misrepresentation or other misconduct by Mercury, all directed at proving that the suit was not time barred. The evidence proffered by Shabott does not support any of these grounds for "extraordinary" relief. Therefore, the motion should be denied.

In further support of this opposition, Mercury states as follows:

**FACTS**

Shabott filed this suit on July 14, 2004. Mercury was served and, in August 2004, Mercury answered the complaint denying any wrongdoing and asserting, inter alia, an affirmative defense that the claims of Shabott were barred by the statute of limitation.

**A. Discovery Orders of the Court**

1. On November 3, 2004, the Court (Tauro, J.) issued its Rule 26 Discovery Order. The Rule 26 Discovery Order required the plaintiff Leon Shabott ("Shabott"), among other things, to provide to Mercury "a copy of, or a description by category and location of, all documents, data compilations, and tangible things in the possession, custody, or control of the party that are relevant to the

disputed facts alleged with particularity in the pleadings." Mercury also had the same obligation.

2. A central issue of dispute was the date when Shabott "test flew his airplane" after he gave it to Mercury to make repairs. In the Complaint, Shabott alleges that this date was July 16, 1998; Mercury submitted evidence that the date was "on or before" July 13, 1998. This evidence included the contemporaneous notes of Mercury's former service coordinator, Michael Wasson. Shabott did not initially provide any documents or information to Mercury.

3. On December 7, 2004, the Court held a Rule 16 Conference. At the Rule 16 Conference, Shabott admitted that he had not complied with his Rule 26 obligations.

4. By Order dated December 9, 2004, the Court ordered that the "Plaintiff has thirty (30) days to comply with the Rule 26 Discovery Order." The Court also stayed all further discovery "until the hearing scheduled for February 14, 2005."

5. On January 5, 2005, Shabott produced 188 pages of documents as his Rule 26 Disclosure. This was intended to include all documents which support the allegation in the Complaint as to when Shabott "test flew his airplane" as required by Rule 26. Shabott never produced any evidence to refute the allegation of Mercury that the "test flight" occurred on or before July 13, 1998.

6. On February 14, 2005, the Court (Tauro, J.) entered a further Order with respect to discovery, including the allowance of some limited depositions proposed by the parties. The Court further set a new discovery deadline of August 31, 2005.

7. None of the deponents proposed by the plaintiff and identified in the Court's February 14, 2005 Order works for Mercury. Nevertheless, the plaintiff never attempted to subpoena any of the witnesses on his list. There is no correspondence either between the parties where the plaintiff requested that any of the named deponents be made available for deposition. No requests by Shabott to make witnesses available were denied.

8. On May 27, 2005, the Court (Tauro, J.) issued a further Rule 26 Discovery Order and a Notice of Scheduling Conference. The scheduling conference was set for July 5, 2005.

9. On July 5, 2006, the Court (Tauro, J.) issued an Order requiring that the parties schedule the deposition of the "expert" to take place prior to August 31, 2005. The Court also scheduled a further conference on September 6, 2005.

10. The deposition of the "expert" took place as Ordered, as did the deposition of the plaintiff. No other depositions were ever scheduled.

11. At the next Court conference, which was rescheduled to September 13, 2005, the Court (Tauro, J.) stayed any further discovery and Ordered Mercury to file a Motion for Summary Judgment by October 31, 2005.

12. On October 31, 2005, Mercury filed its Motion for Summary Judgment.

13. The plaintiff opposed the motion with all known evidence.

14. Based on the evidence, the Court (Tauro, J.) granted summary judgment in favor of Mercury. In the Memorandum, the Court expressly found that "although Shabott appears to dispute that July 13, 1998 is the date on which Mercury Air returned the airplane to him, he has provided no evidence to the contrary."

## B. Shabott's Failure to Meet his Discovery Obligations

15. Shabott was deposed on three separate days. On each day, Shabott was asked whether he had any additional documents or evidence to provide. His response was always the same:

He compiled one stack of documents from the files he could locate; he was unable to locate certain documents; he had moved several times and his boxes were in many different places; he knew of the locations, including his ex-wife's home; he expressly identified the only additional documents which he could not produce as three alleged agreements

between Mercury and him; he agreed to undertake the task of finding the additional documents if they existed; he was expressly asked about any documents to refute the evidence of Mercury that the plane had been returned to Shabott on or before July 13, 1998, and Shabott repeatedly replied that he could not produce such documents.  See Deposition testimony attached to the Affidavit of David C. Aisenberg filed in support of this opposition.

16. Shabott never undertook to get any documents from his ex-wife, even though he knew she may have had documents. No subpoena was ever served upon the ex-wife.

17. Shabott never attempted to obtain copies of his old checks from the banks on which they were drawn, and nothing prevented him from doing that.  No subpoena was ever served upon the bank.

18. Shabott never attempted to obtain copies of his telephone records, and nothing prevented him from doing that.  No subpoena was ever served upon the telephone company.

19. Shabott never attempted to obtain copies of his credit card records, and nothing prevented him from doing that.  No subpoena was ever served upon the credit card company.

### C. The "Newly Discovered" Evidence Produced by Shabott Does Not Prove that The Airplane Was returned on any Day Other than One "On or Before" July 13, 1998

20.  Shabott now offers telephone bills, credit card bills and checks as his "newly discovered" proof. At all times, Shabott had the ability to obtain these documents. Indeed, he now claims that the records he now relies upon were given to him by one of his children. Shabott never alleges that he asked his children for these records during the discovery phase of the litigation. Shabott, at all times, knew of these records and where they were located, yet he never made an effort to get them.

21.  Mercury did nothing to prevent the plaintiff from proving his allegations or from obtaining the records he deemed necessary to meaningfully prepare and present his claim.

22.  Mercury has never stated that the airplane was returned on July 13, 2006. Instead, the evidence was that the date was "on or before" July 13, 1998. This is consistent with the contemporaneous notes of Michael Wasson and also with the repair bills produced by Mercury. The notes reflect that Mercury identified the problem on July 13, 1998 (not that Shabott flew the plane on that day), and the repair bills reflect that the initial repairs which led to the test flight were completed on July 6, 1998.

7

23. Mercury never claimed that it required payment prior to allowing Shabott to take a "test flight."

24. There is no basis to claim that any evidence was procured by fraud.

25. The records now provided by Shabott do not prove that the inspection took place after July 13, 1998. No issue was ever raised during discovery as to how Mercury posted its credit card payments. There is no evidence that a payment posted by the credit card company on July 16, 1998 means that the payment was tendered on that day. The telephone records, checks and receipts also do not prove that the "test flight" took place after July 13, 1998.

**ARGUMENT**

I.  **Motions Pursuant to Rule 60(b)**

Rule 60(b) provides, in part, that:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; . . .

Fed. R. Civ. P. 60(b). It is well established that "relief under Rule 60(b) is extraordinary in nature and that motions invoking that rule should be granted sparingly." Karak v. Bursow Oil Corp., 288 F.3d 15, 19 (1st. Cir. 2002). Shabott

8

seeks relief pursuant to Rule 60(b) on the grounds of (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); and (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party. Shabott cannot establish that this is one of the "extraordinary" cases where such relief should be granted.

## II. Shabott Cannot Prevail on the Grounds of Mistake, Inadvertence, Surprise, or Excusable Neglect Pursuant to Rule 60(b)(1) Because All of the Information He Now Presents Was Known to Him During Discovery

Rule 60(b)(1) provides that a party may be relieved from a final judgment on the grounds of "mistake, inadvertence, surprise, or excusable neglect." As noted by the Supreme Court of the United States, "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," including whether the reason for delay was "within the reasonable control of the movant." Pioneer Investment Services Company v. Brunswick Associates Limited Partnership, 507 U.S. 380, 395 (1993). See Deo-Agbasi v. The Parthenon Group, 229 F.R.D. 348, 351 (D. Mass. 2005). The reason for the delay is the most "critical to the inquiry." Graphic Communications Int'l Union, Local 12-N v. Quebecor Printing Providence, Inc., 270 F.3d 1, 5 (1st Cir.

9

2001); see United States v. $23,000 in United States Currency, 356 F.3d 157, 164 (1st Cir. 2004); Deo-Agbasi, 229 F.R.D. at 351-352 ("Of the factors considered in determining whether excusable neglect is present, the foremost is the reason for the delay.").

Here, the reason for delay is mentioned by Shabott in his affidavit, paragraph 47, as "[I]n the (sic) October of 2006 I had some boxes of personal belongings retuned (sic) to me that were not accessible to me since before my divorce in 2001." Shabott explains this entry further in his memorandum where he states on page 2, "[t]hese financial records previously had been in the exclusive custody of the disgruntled former spouse of Shabott," and on page 7, "[b]efore the (sic) 20 October 2006, Shabott was unable to supply written evidence to support this claim because his disgruntled former spouse denied him access to these relevant financial records of 1998." In his deposition, Shabott admitted to knowing where these documents were. The facts are also that, despite such knowledge, Shabott never undertook any efforts to obtain the records before the entry of judgment. That failure is fatal to his motion pursuant to Rule 60(b)(1).

Under Rule 60(b)(1), the issue is how much Shabott contributed to the delay by not accessing the documents he presents in connection with his motion. In United States

Steel v. M. DeMatteo Construction Co., 315, F.3d 43, 52 (1st Cir. 2002), the First Circuit affirmed the denial of a Rule 60(b)(1) motion on the grounds that the movant "could have gained access to the records" earlier, but did not. This reasoning is further explained by the First Circuit in the case of Washington v. State Street Bank & Trust Co., 2001 U.S. App. Lexis 30144 at 3-4 (1st Cir. 2001), where the First Circuit also affirmed the denial of Rule 60(b)(1) motion. There, the First Circuit found that access includes knowledge of where the documents are located, even if the party does not physically have the documents.

The facts of Washington are nearly identical to the facts presented by Shabott, including that the plaintiff was pro se. In Washington, the District Court had granted summary judgment to the defendant on statute of limitations grounds. Sometime later, the pro se plaintiff filed a Rule 60(b)(1) motion based on "new factual information. . .which, he suggests, alters the analysis as to the triggering event for the running of the statute of limitations." The motion was denied. On appeal, the First Circuit summed up its reasoning for affirming the judgment as follows:

> [The plaintiff] failed to provide sufficient excuse for the delay. There is no suggestion that the information was unknown to him. Rather, [the plaintiff] makes reference to his lack of litigating experience, the fact that certain documents were not readily available due to his move from the Northeast to Atlanta, and his mental difficulties. However, the move to Atlanta

> occurred long before the initiation of the lawsuit, and the limitations issue had already been litigated. . .[The plaintiff's] alleged mental difficulties did not otherwise interfere with his ability to provide factual detail.

Washington, 2001 U.S. App. Lexis 30144 at 4. For the same reasons, Shabott's motion should be denied. Just as the plaintiff in Washington lost because he failed to access known information, so should Shabott. See Barrett v. Lombardi, 239 F.3d 23, 28 (1st Cir. 2001) ("Where the plaintiff should have been aware of the deficiencies in his case before the entry of judgment, relief under Rule 60(b) would not have been justified.") (quoting Mas Marques v. Digital Equipment Corp., 637 F.2d 24, 29 (1st Cir. 1980) (alteration in original). Shabott admittedly knew that his ex-wife had the documents and Shabott did nothing to obtain those documents while the case was pending. For this reason, Shabott's motion pursuant to Rule 60(b)(1) should be denied.

**III. Shabott Cannot Prevail on the Grounds of Newly Discovered Evidence Which by Due Diligence Could Not Have Been Discovered in Time to Move for a New Trial Under Rule 59(b) Because Shabott Failed to exercise Due Diligence to Obtain Known Information**

Rule 60(b)(2) provides that a party may be relieved from a final judgment on the grounds of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." The failure to access known information is fatal to

12

a claim for relief under Rule 60(b)(2). See United States Steel, 315 F.3d at 51-52; Karak v. Bursaw Oil Co., 288 F.3d 15, 20 (1st Cir. 2002); Washington, 2001 U.S. App. Lexis 30144 at 5 (prior knowledge of evidence or its source defeats a claim under Rule 60(b)(2)). The relevant standard is "whether someone on the plaintiff's side of the case (be it the plaintiff or his attorney) knew of the witness." Karak, 288 F.3d at 20.

In Karak, the First Circuit described in detail the prerequisites for a Rule 60(b)(2) motion. Karak involved a business dispute where one party was attempting to maintain a business relationship that the other party was terminating. Sometime after judgment entered against the plaintiff, thus terminating the relationship, the plaintiff moved for relief from the judgment under Rule 60(b)(2), on the grounds of newly discovered evidence, and under Rule 60(b)(3), on the grounds of fraud. The district court denied the Rule 60(b) motion and the denial was affirmed by the First Circuit.

The First Circuit's analysis is on point. It examined what the new evidence was and how the plaintiff could have accessed it prior to entry of judgment in the district court. In Karak, the new evidence was an affidavit of a former employee of the opposing party. The plaintiff knew the former employee through many years of business dealings

prior to the litigation; the former employee lived nearby; and access to the former employee was available while the case was proceeding in the district court. The First Circuit specifically noted that, "[t]aking the record as a whole, [the plaintiff] not only must have known of the witness [] but also must have appreciated his likely significance." Id. Based on these factors, the First Circuit held that "the delay in contacting [the former employee of the opposing party] appears to doom [the plaintiff's] current quest" under Rule 60(b)(2). Karak, 288 F.3d at 19.

Shabott's "newly discovered" evidence is no different than that presented in Karak. Here, Shabott even testified as to the probable evidence and its location, and he plainly appreciated its "likely significance." Therefore, it cannot be "newly discovered" within the meaning of Rule 60(b)(2). As a result, just as in Karak, Shabott has "failed to show that, had he exercised due diligence, [the evidence] would not have been available earlier." Karak, 288 F.3d at 20. This failure is fatal to Shabott's motion under Rule 60(b)(2).

**IV. Shabott Cannot Prevail on the Grounds of Fraud, Misrepresentation or Other Misconduct Pursuant to Rule 60(b)(3) Because There Was None and the Judgment Was Not Unfairly Obtained**

Rule 60(b)(3) provides that a party may be relieved from a final judgment on the grounds of fraud (whether

14

heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party. The burden is on the moving party to demonstrate, "by clear and convincing evidence" both that there was misconduct and that the "misconduct foreclosed full and fair preparation or presentation of [his] case." Karak, 288 F.3d at 21. Merely establishing a conflict in the evidence is not enough. Id. Moreover, if the party has "knowledge of the alleged inaccuracies or access to information which could have resulted in this knowledge" at the time the discovery was presented, the party cannot prevail on his Rule 60(b)(3) claim. Pakizegi v. First National Bank of Boston, 1995 U.S. App. Lexis 13927 at 2 (1st Cir. 1995). See Baghdady Tiller v. Baghdady, 294 F.3d 277, 282 (1st Cir. 2002); Washington, 2001 U.S. App. Lexis 30144 at 5; Ojeda-Toro v. Rivera-Mendez, 853 F.2d. 25, 28 (1st Cir. 1988) (a party may not prevail on a Rule 60(b)(3) motion on the basis of fraud where he or she. . .has knowledge of inaccuracies in an opponent's representations at the time of the alleged misconduct."). Shabott's claim under Rule 60(b)(3) is doomed both because he cannot demonstrate fraud or misconduct and also because he had knowledge and access to the information he now is presenting.

The issue raised by Shabott is whether he had access to his airplane "on or before July 13, 1998" as alleged by

Mercury or on July 16, 1998 as alleged by Shabott. This conflict was presented at the inception of the case when Shabott alleged the July 16, 1998 date in his complaint. In response, Mercury provided the affidavit of Michael Wasson, its former service coordinator, which included his contemporaneous notes of communications with Shabott about the airplane and its repairs and the allegation that the airplane was returned on or before July 13, 1998. During discovery, Shabott failed to pursue or present any evidence to support his claimed date or to refute the evidence provided by Mercury. Shabott not only had ample opportunity to do so (he was advised of his Rule 26 disclosure obligations and he was deposed on three days), but also he knew what information he needed (e.g., business records to demonstrate what he was doing on certain days in July 1998) and who had it (his ex-wife, among others). See, e.g., Deposition Transcripts.

The failure of Shabott to access this information earlier is fatal to his pursuit of relief for judgment under Rule 60(b)(3). See Goodman v. Bowdoin College, 380 F.3d 33, 48 (1st Cir. 2004); United States Steel, 315 F.3d at 52; Baghdady Tiller, 294 F.3d at 282; Karak, 288 F.3d at 21. In each of these cited cases, the First Circuit repeatedly affirmed denials of relief under Rule 60(b)(3) because the moving party did not use "the complete panoply of discovery

devices" available to him under the Federal Rules of Civil Procedure, including subpoenas and deposition notices, before the case went to judgment. Id. Quite simply, one who does not do these things when they could, is not "entitled to the extraordinary remedy of relief through a Rule 60(b)(3) motion." Goodman, 380 F.3d at 42-43.

There also is no fraud, misrepresentation or other misconduct here. Wasson has presented his notes. Shabott has now, after the fact, presented evidence allegedly to contradict the notes. This other evidence does nothing more, however, than raise a conflict. It does not prove that Wasson was wrong with his entries; it does not prove that Wasson fabricated his entries; most importantly, it does not prove that Shabott did not have access to "test fly" his airplane on or before July 13, 1998. There is nothing conclusive about the new evidence. For example, there are gaps in the telephone records; someone else could have been using the telephone; the checks were deposited on dates other than the alleged date of presentment; and finally, the credit card statement in and of itself is not proof that the card was presented on July 16, 1998 or that Mercury would not allow a "test flight" in the absence of payment in full. Therefore, this "new evidence" as stated by the First Circuit in Karak, "even when read through rose-colored glasses, merely establishes a conflict in the

evidence; it does not clearly and convincingly show that [Mercury] intentionally misrepresented pertinent facts. The former showing without the latter, is not enough. See Geo. P. Reintjes Co. v. Riley Stoker Corp., 71 F.3d 44, 49 (1st Cir. 1995) (holding that a showing of perjury, without more, is insufficient to entitle a party to relief from judgment under Rule 60(B0(3))." Karak, 288 F.3d at 21.

In sum, just as the First Circuit concluded in Karak,

> While one can debate the extent to which [Shabott's] version of the facts differs from [Mercury's], and which of those versions is more credible, one cannot plausibly contend, on this record, that [Shabott's] pursuit of the truth was hampered by anything except his own reluctance to undertake an assiduous investigation (including pretrial discovery).
>
> That ends the matter. Rule 60(b)(3) is designed to afford protection against judgments that are unfairly obtained rather than against judgments that are factually suspect.

Karak, 288 F.3d at 22. There simply is no evidence that the judgment in favor of Mercury was "unfairly obtained." Therefore, Shabott cannot prevail on his motion pursuant to Rule 60(b)(3).

## CONCLUSION

For the forgoing reasons, Shabott's motion for relief pursuant to Rule 60(b) should be denied.

>	DEFENDANT
>	MERCURY AIR GROUP, INC.
>
>	By its attorneys,
>
>	/s/David C. Aisenberg
>	David C. Aisenberg, BBO#545895
>	Looney, Cohen, Reagan & Aisenberg LLP
>	33 Broad Street
>	Boston, MA  02109
>	(617) 371-1050