UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LEON SHABOTT | ) |
| | ) |
| *Plaintiff* | ) Civil Action No. |
| | ) |
| v. | ) 04-11575-JLT |
| | ) |
| MERCURY AIR GROUP, INC. | ) |
| | ) 6 December 2006 |
| *Defendant* | ) |
| | ) |
| AVCO CORPORATION, | ) |
| LYCOMING DIVISION | ) |
| | ) |
| *Third Party Defendant* | ) |

FILED
IN CLERKS OFFICE
2006 DEC 11  P 1: 10
U.S. DISTRICT COURT
DISTRICT OF MASS.

**PLAINTIFF'S PETITION FOR THE COURT TO HOLD A SHOW CAUSE HEARING TO DETERMINE WHETHER MICHAEL WASSON SHOULD BE HELD IN CONTEMPT**

Plaintiff Leon Shabott ("Shabott") petitions the Court to hold a show cause hearing to decide whether Michael Wasson (Wasson) should be held in contempt. On 9th December 2004 Defendant's attorney filed an "Affidavit of Michael Wasson" ("Wasson's Affidavit") in support of their first motion for Summary Judgment.[1] See Attachment #1. Attached to the Wasson's Affidavit is a set of hand written notes ("Wasson's Notes") and a typeface transcription of these notes. See Attachment #2. In Wasson's Affidavit, Wasson claims under oath to have written Wasson's Notes beginning in July 1998 and continued to add additional comments to these notes over a period of time ending about a year latter. Recent credit card records obtained by the Plaintiff indisputably show that relevant dates and times asserted in Wasson's Notes couldn't possibly be seen as true. Common sense cannot allow this failing to be construed as an error. It must be a fabrication by Wasson and an act of possible perjury.

---
[1] Wasson allegedly signed Wasson's Affidavit on 7 December 2004.

Additionally Shabott is asking the Court to order the Defendants to:

1. Turn over the original Wasson's Notes so that Shabott can have them inspected by a certified handwriting expert to conduct a forensic analysis on them in order to ascertain the authenticity of these notes,

2. Provide Wasson to be deposed by Shabott so that he may inquire about the authenticity of Wasson's Notes, or alternatively

3. Order that Wasson must attend the requested hearing and to be available for the examination of the parties to testify under oath as to the authenticity of Wasson's Notes

The Wasson's Affidavit at ¶ 4:states --

"During that time, I had occasion to coordinate the service of a Beechcraft twin bonanza airplane ("Airplane") owned by Leon Shabott ("Shabott"). I maintained contemporaneous records of my communication with respect to the airplane. Copies of my handwritten and typed notes are attached hereto. I have reviewed those notes in connection with preparing this Affidavit"

The Wasson's Affidavit further states at ¶ at 7:

"Mercury returned the Airplane to Shabott on or before July 13 1998.

The Wasson's Affidavit further states at ¶ 8:

"On July 14, 1998, I notified Shabott that metal was found in the left engine and that repairs were necessary. Shabott responded that he would look for a used engine. Shabott stated that he would get back to me at the end of the week."

The dates cited in these passages *supra* are at complete odds with his newly discovered 1998 credit card bill ("1998 Credit Card Bill") that indisputably states that the date Shabott paid the money owed the Defendant for repair work done to the his Airplane was 16 July 2006. See 14 November 2006 "Affidavit of Leon Shabott" at ¶ 47. This is the same date claimed by Shabott in his Complaint in which he claimed to have paid the said bill, took the Airplane on a test flight and immediately returned it to the Defendants for

further repair work having discovered continuing mechanical problems with the Airplane. It cannot be seen as credible that the Defendant would give Shabott possession of his Airplane without first paying the money that Shabott owed the Defendant. In fact, the Defendant has never challenged that Shabott did not pay his repair bill owed to the Defendant before taking the Airplane on its said test flight.

At no point did Wasson in Wasson's Affidavit or in any other filing with the Court maintain that he had personal knowledge that Shabott paid his bill and then went on his test flight on 13 July 1998. Wasson simply alleges that he concludes this was the date based on the recollection supplied by his review of Wasson's Notes.

In support of the instant motion, Shabott sets forth the following facts:

1. In 2002 Shabott visited Wasson who gave Shabott what he stated was the entire file on Shabott's airplane. See 13 November 2006 "Affidavit of Leon Shabott" at ¶ 41.

2. Shabott commenced the instant action on 14 July 2004. Pursuant to the six year statute of limitations imposed by Massachusetts state law on breach of contract claims, Shabott would have had to accrue his breach of contract claim no earlier than July, 14th 1998 See Massachusetts General Laws Ch. 260 § 2A

3. The Complaint of Shabott at ¶ 6 states:

   "Once the repairs were completed and fully paid for Plaintiff test flew his airplane on July 16, 1998. While on the test flight the motors began to show signs of having some problems. The aircraft was able to land with rough running motors without incident."

4. On 9 December 2004 Mercury files their first motion for summary judgment The Defendant's files Wasson's Affidavit and its attached Wasson's Notes with the Court on this date. Wasson's Affidavit claims the historical fact, based on Wasson's Notes that Shabott took possession of his Airplane from the Defendant and returned it to the

Defendant on July 13th 1998, conveniently one day before the date required by the statute of limitations for Shabott to maintain his breach of contract claim against the Defendants.

5. On 11, March 2004, 14 February 2005 and again on 27 May, 2005 the court issues a discovery order which orders the Defendants to produce Michael Wasson to be deposed by Shabott. However, the Defendants' attorney refuses several direct requests by Shabott to schedule a date for Wasson's deposition by him.

6. On 31 October 2005 the Defendant files its second motion for summary judgment without having made Wasson available for deposition by Shabott. On 14 February 2006 the Court grants the Defendants second motion for summary judgment.

7. On 14, November 2006 Shabott files his motion to alter its judgment pursuant to Rule 60(b).

There is no question that the Court's order granting summary judgment to the Defendant was entirely based on the claim of Wasson's Affidavit that the date of Shabott's test flight was on 13 July 1998. Clearly if the Court had the 1998 Credit Card Bill in evidence at the time of its Order, it would have denied the Defendant's summary judgment motion because this evidence provides a material issue of fact supporting the claim of Shabott's Complaint that Shabott's breach of contract claims accrued on 16 July 1998, two days after the date required by the relevant statute of limitations as determined by the Court pursuant to its judgment.

The conflict in alleged fact between the recently discovered 1998 Credit Card Bill and the allegations of Wasson's Affidavit demands that the Court hold the requested hearing in order to investigate the significant possibility of fraud by Wasson. It was not just one date that Wasson's Notes gets completely wrong. Wasson's Notes gets the date of the test flight wrong and also the date of the day that he told Shabott about the damage sustained by his Airplanes engines, which

Wasson's Notes claim was on the next day, which it claimed wrongly as 14 July 2006, three days before it must have taken place by Wasson's Affidavits own allegation. It is inconceivable that if indeed Wasson did author these notes at the time he alleges that he would have gotten both dates wrong.

The requested hearing is necessary in order to square the difference between the allegation of Wasson's Affidavit and the indisputable fact that the 1998 Credit Card Bill's indisputable proof that the date that Shabott paid his repair bill to the Defendants and then did his test flight occurred on 16 July 2006, and not 13 July 2006 as maintained by Wasson's Affidavit. The convenient appearance of a photocopy of Wasson's Notes into the proceedings must be seen as suspect. Upon information and belief, the original version of Wasson's Notes has neither been made available to Shabott nor has the Defendant's attorney even seen it. See 5 December 2006 Affidavit of Leon Shabott at ¶ 18.

The Court should not allow possible perjury of Wasson, possibly assisted by other(s) whose identity(s) are yet unknown, to determine the outcome of Shabott's meritorious claims against the Defendants. Based on the evidence supplied by the 1998 Credit Card Bill, the Court would be compelled, if it chooses to consider it, to reverse its granting of summary judgment to the Defendants and allow Shabott to proceed to trial on his meritorious claims against the Defendant. There is no serious dispute that the Defendant improperly repaired Shabott's Airplane's engine and this negligence resulted in an instant catastrophic destruction of these engines within minutes of them being turned on during Shabott's test flight on 16 July 1998.

For the above reasons, the Plaintiff asks the Court to grant his requested relief.

BY: _____

Leon Shabott, Plaintiff
4137 Center Pond Road
Newark, VT 05871
802.723.5487

*Pro Se*

### CERTIFICATION OF LOCAL RULE 7.1 CONSULTATION

I certify that I consulted with the Defendant's attorney on the issues underlying this motion during a phone call with him on 4 December 2006.

_____
Leon Shabott, Plaintiff

### CERTIFICATION OF SERVICE

I certify that I have served on this date a copy of this motion on the Defendant's attorney and Third Party Defendant's attorney VIA U. S. First Class Mail on 6 December 2006.

_____
Leon Shabott, Plaintiff

Attachment #1

P.1

7-13-98   Found metal in RBC while T.shooting EGT problem. HYDRAULIC TAPPET BODY BROKEN.

MATTITUCK (MAHLON) said original "flat" tappets probably caused by not enough use. 800 hrs in 18 years.

ENGINE CASES MUST BE SPLIT TO REPLACE TAPPET bodies - MATTITUCK 6500⁰⁰. 7½ weeks ATLANTIC AIRCRAFT ENGINE 6250⁰⁰ 3½ weeks both OVH shops quoted labor only - additional for PARTS, GASKETS, seals, etc.

~~[redacted]~~ He told Bill he was going to "shop around" for another OVH shop and would get back to us.

7-14-98   Owner is looking for a used engine to swap-out. He will let us know by the end of this week @ 7-17-98.

7-30-98   SHIPPED ENGINE TO AVIATION ENGINES FOR REPAIR PER CUSTOMER.

8-5-98   ENGINE ARRIVED SAFELY PER PAM AT AVIATIONS ENGINES

8-13-98   FAX FROM ENGINE SHOP - INDICATING MIXING OF NEW STYLE AND OLD STYLE PARTS IN ENGINE. (NO INFO FROM LYCO CUSTOMER SERVICE WHEN THEY SUPERCEDED THE LIFTER PART NUMBER) 73062 WAS NOT AVAILABLE, or even listed in distributor's data bases. I called Lyco customer service 6-24-98 she said to use 78290. Which we bought from Airall.

8-19-98 (09:00) Mike Calbera at Lyco - GO.480-F4A6 ENGINE uses listed P/N 78290 per S.I. 1011H - IT DOESN'T

GO-480-F4A6

P.2

8-19-98   Installed in engine. "Aviation Engines should read the service instruction before they make any more comments."

8-19-98   Leon Shabbot says engine shop told him this was our fault. He wants to know who is going to pay for this repair before engine shops tears down engine.

8-19-98   Aviation Engines 205-926-5186 (Pam) will fax estimate to me. Per Pam if using a 480 parts book we used the correct lifter — but if you're experienced with 480's you'll know that they are incompatible because of different bleed down rates. — Estimate for tear-down repair & reassemble will be faxed shortly.

8-20-98   Jim Matthews @ Lyco 12 years — Lifter doesn't matter — but if you replace any lifters with new style you should replace all lifters with new style. (PN 78290) otherwise due to different bleed down rates engine will run erratically — but this will NOT CAUSE TAPPET BODIES TO BREAK.

8-27-98   Leon called wants to know what we are going to pay for. Now he said metal in engine scored the crankshaft.

8-27-98   Per J.W. based on our investigation damaged tappet bodies were not caused by anything we did.

P.3

**8-27-98**  Leon wants a meeting with John Vraga — to determine what we are going to pay for. Leon said he has a letter from Lycoming stating lifters will cause tappet bodies to break. He would not fax me a copy of that letter. Also stated RT engine is running funny. Leon stated that he wants to remain as amniable as possible.

**8-27-98**  I called Jim Matthews at Lyco. I asked for a copy of letter to Leon. Jim was unaware of any such letter and would be very interested to see it. Find out who signed it so ~~and~~ he can get confirmation from that person

**8-27-98**  Called Leon and scheduled meeting for 11:00 am monday (8-31-98) morning. Leon seems confident that we can get this worked out.

**8-31-98**  Leon meeting, John Wraga, myself & Bill Young began at noon. Leon presented letter from Lycoming — (Robert Ohnmeiss) to Aviation Engines (Don Freeman) agreeing with Don Freeman's opinion that new style lifters P/N 78280 did cause breakage. I faxed the letter to Jim Matthews at Lyco. I asked Jim Matthews to look into the possibility of sending his S.E. Regional Service Rep to Aviation Engines to get a firsthand look at broken lifter bodies.

P.4

9-9-98  Called Jim Matthews at Lyco. 717-323-6181 x 7096. Left message for him to call back. We need to know if he has contacted Robert Ohrmeiss about Leon's letter.

9-10-98  Called Jim Matthews at Lyco. He spoke briefly to Robert OHRMEISS and confirmed Bob Ohrmeiss opinion that the new style lifters will cause erratic engine running and Hydraulic lifter body breakage. Jim disagrees with Bob but admits that Bob has 4 times more experience. Jim is very reluctant to say anything more, "He doesn't want to end up in the middle of something." I asked for something in writing clarifying Lyco's opinion and was advised to talk to Sharon the engineering secretary. I left a message on Sharon's voice mail and am awaiting a call back.

9-10-98  Called Leon - he wanted to talk to Jim Matthews at Lycoming - So I left Jim's name & phone number with extension on Leon's voice mail. He was on the road so he could not write it down.

K 2026  Jim MATTHEWS                              C

                                                                    P.S.

8-31-98    called Jim Brooks Lyco Regional Manager.
           He'll call Jim Matthews and confer with
           him before committing to come and
           look at RIGHT ENGINE.

8-31-98    Aviation Engines - Don Freeman - CRANKSHAFT
           is scored but it will polish out. MAGNA-
           FLUXING OF OTHER ENGINE PARTS SHOWS
           NO DAMAGE - Don would not be at all
           APPREHENSIVE TO PUT THIS ENGINE BACK
           TOGETHER AND RETURN TO SERVICE.

8-31-98    Jim Brooks called. He is not going to come out. He
           MUST PULL 3 CYLINDERS ON ONE SIDE AND
           INSPECT WITH A LIGHT & MIRROR - YOU CAN
           see all of them, AFTER BODIES SB 1011H - SI 1182A
           OK TO REPLACE RT ENG LIFTERS WITH OLD STYLE IF BODIES ARE OK.

8-31-98    Bill Y. ✓ above procedure NOT necessary Just pull Push Rod
           Tubes and look at LIFTER BODIES.

9-1-98     called Jim MATTHEWS LEFT MESSAGE FOR
           HIM TO CALL ME BACK - ANY FEEDBACK ON
           ROBERT OHNMEISS LETTER THAT I FAXED Jim
           Yesterday.

9-1-98 ✓   Jim MATTHEWS called - Robert OHNMEISS WAS
           RECENTLY TRANSFERRED TO ACCIDENT INVESTIGATION
           AND is "TIED UP" WITH THE FAA SO HE COULD NOT
           BE REACHED. FOR COMMENT. SEE SB 1182A FOR
           INFO ON CAM & ROCKERARMS. HE WILL CALL BACK
           AFTER CONTACTING Robert OHNMEISS.

9-4-98     Telecon - John Wraga, myself & Andy FAIRFAX.
           Andy Feels, Lycoming should accept some
           responsibility for this problem.

P6

9-10-98    Charlie Anstadt - Lyco engineer called - said he has no experience mixing old & new style components - but feels that it would only cause rough running at idle. Maybe with the wrong combination of camshaft - lifters and rocker arms you would get the right valve train dynamics to cause breakage.
If there was any rust in the bores of the old hydraulic lifter bodies, the bores would wear oblong - then when installing a new lifter (full size perfectly round it is only supported on two sides - ask engine shop to measure bore diameters for uneven wear.

9-11-98    Jim Matthews at Lyco called. He had a conference call with Leon Shabot, Don Freeman (Aviation Engines), Robert Ohrmeiss and Charlie Anstadt. Engine was overhauled in 1981 with wrong tappet bodies (P/N 72877 straight cast iron), wrong camshaft P/N 71305 and wrong rocker arms P.N. 67113 intake and P/N 67112 exhaust. SERVICE instruction 1182 revision A from 1978 says to replace camshaft and rocker arms at overhaul. The engine should have steel hyperbolic bodies P/N 73061 or P/N 15B21318 not P/N 72877 which are cast iron straight bodies. Lyco cannot positively say what caused damage but they suspect excessive valve clearance caused by combination of wrong parts.

write us a letter. Leon agreed that we could put his acft on a tie down spot outside.

6-99  Leon dropped off an engine that he sourced from Broward County, Fla. Sheriff's Dept. (Abandoned drug running aircraft left in field) w/ log books. We told him that we would not install that engine but we would store it for him.

9-1-99  Leon dropped by and met with Greg Cadieux — (Twin Bonanza collector/Broker) Leon might sell ACFT at a "FIRE SALE" Price. but THINKS HE will REGRET IT LATER. ("his ACFT is a loose end in his life that needs to be cleaned up but also his only asset.") He says he bought the ACFT FOR $45K. He will call John Wraga in AM. 9-2-99

P8

9-23-98  @ 2:30 Leon called to see if there was any news. I told him everything was in the hands of our insurance people.

10-7-98  Leon called - he talked to Jim Matthews at Lycoming, and after talking to Leon Jim "backed-off" about wrong parts in engine since overhaul I.E. camshaft, rocker arms etc causing damage. Leon wants this to move forward. Engine shop needs space wants to get his engine out and he is still driving to Vermont. He is going to call Lyco again and he will keep me informed.

10/28/98  Leon called - wondering about his airplane. I told him that we haven't done anything with it since turning the info over to Mercury's insurance guy. He has a call into Lycoming's Jim Matthews but has not got a response yet. He will call John Wraga and ask him if he can call Andy Fairfax direct to expedite the situation.

3/30/99  John Wraga - Leon Shabbot & myself had meeting - Leon was very stressed - had business & family problems. commuting by car to Watertown Ma. from Chelsea Vt. He asked me not to charge service fees - tie down - storage etc. to which

Attachment 2 p.1

**06-24-98**  LEON SHABOTT DROPPED OFF HIS BEECHCRAFT TWIN BONANZA FOR SERVICE. WE COMPLIED WITH A COMPRESSION CHECK ON BOTH ENGINES AND FOUND RIGHT ENGINE CYLINDER #1 AND LEFT ENGINE CYLINDER #2 BAD. REMOVED BAD CYLINDERS AND SENT TO MATTITUCK AIRBASE FOR REPAIR. MATTITUCK REPAIRED ONE CYLINDER AND REPLACED THE OTHER WITH AN EXCHANGE UNIT. WHILE TROUBLESHOOTING LOW COMPRESSION PROBLEM IT WAS FOUND TO HAVE FOUR FLAT LIFTERS P/N 73062. WHEN TRYING TO ORDER THAT PART NUMBER NO LYCOMING DISTRIBUTORS HAD ANY RECORD OF THAT NUMBER ON FILE. CONTACTED LYCOMING CUSTOMER SERVICE AND WAS TOLD TO USE PART NUMBER 78290. NO MENTION WAS MADE OF POTENTIAL PROBLEMS WITH MIXING OLD AND NEW STYLE LIFTERS. NOR WERE WE TOLD THAT WE HAD TO CHANGE ALL LIFTERS TO NEW STYLE. NO SERVICE BULLETINS OR INSTRUCTIONS WERE REFERENCED. FOUR EACH PART NUMBER 78290 WERE PURCHASED FROM AVIALL ON PURCHASE ORDER NUMBER 091435. THESE NEW STYLE LIFTERS WERE INSTALLED WITH SERVICABLE CYLINDERS FROM MATTITUCK AIRBASE.

07-13-98  FOUND METAL IN LEFT ENGINE #1 CYLINDER ROCKERBOX COVER WHILE TROUBLESHOOTING E.G.T. REMOVED CYLINDER ASSEMBLY AND FOUND HYDRAULIC TAPPET BODY BROKEN. CALLED MATTITUCK AIRBASE ENGINE OVERHAUL SHOP AND SPOKE TO MAHLON. HE SUSPECTED FLAT TAPPETS WERE CAUSED BY NOT ENOUGH USE. @ 800 HOURS IN 18 YEARS. ENGINE CRANKCASE MUST BE SPLIT TO REPLACE TAPPET BODIES. MATTITUCK QUOTED $6500.00 AND 7 ½ WEEKS DELIVERY. OBTAINED SECOND QUOTE FROM ATLANTIC AIRCRAFT ENGINES. $6250.00 AND 3 ½ WEEKS DELIVERY. BOTH OVERHAUL SHOPS QUOTED LABOR ONLY ALL PARTS, GASKETS, SEALS, ETC. ARE AT ADDITIONAL COST.

07-14-98  NOTIFIED OWNER OF PROBLEM. HE TOLD BILL YOUNG THAT HE WAS GOING TO SHOP AROUND FOR ANOTHER OVERHAUL SHOP AND WOULD GET BACK TO US.

07-14-98  OWNER IS LOOKING FOR A USED ENGINE TO SWAP-OUT. HE WILL LET US KNOW BY THE END OF THE WEEK.

07-30-98  SHIPPED ENGINE TO AVIATION ENGINES FOR REPAIR PER CUSTOMER REQUEST.

08-05-98  ENGINE ARRIVED SAFELY PER PAM AT AVIATION ENGINES.

08-13-98  RECEIVED FAX FROM AVIATION ENGINES INDICATING THAT PROBLEM COULD HAVE BEEN CAUSED BY MIXING OF OLD AND NEW STYLE PARTS IN VALVE TRAIN. PART NUMBER FOR OLD STYLE LIFTER 73062 WAS NOT AVAILABLE, OR EVEN LISTED IN DISTRIBUTORS DATA BASE NETWORKS. I CALLED LYCOMING CUSTOMER SERVICE ON 06-24-98 BEFORE ORDERING THE PARTS AND WAS ADVISED TO USE PART NUMBER 78290. NO MENTION WAS MADE OF POTENTIAL PROBLEM OF OLD AND NEW STYLE PARTS. ORDERED LIFTER PART NUMBER 78290 FROM AVIALL.

08-19-98  SPOKE TO MIKE CALBERA AT LYCOMING. HE VERIFIED THAT A GO-480-F4A6 USES LIFTER PART NUMBER 78290 PER SERVICE INSTRUCTION 1011H. HE FURTHER STATED THAT IT DOESN'T MATTER WHAT LIFTER BODY, HYPERBOLIC OR STRAIGHT, IS INSTALLED IN ENGINE. AND "AVIATION ENGINES SHOULD READ THE SERVICE INSTRUCTION BEFORE THEY MAKE ANY MORE COMMENTS."

08-19-98  LEON SHABOTT SAID THE ENGINE SHOP SAID THIS BREAKAGE WAS OUR FAULT. HE WANTS TO KNOW WHO IS GOING TO PAY FOR THE REPAIR BEFORE ENGINE SHOP PROCEEDS.

08-19-98  PAM AT AVIATION ENGINES SAID IF WE WERE LOOKING IN THE 480 PARTS BOOK THEN WE USED THE RIGHT LIFTER BUT IF YOU'RE EXPERIENCED WITH 480S YOU'LL KNOW THAT THEY ARE INCOMPATIBLE BECAUSE OF DIFFERENT BLEED DOWN RATES. SHE WILL FAX AN ESTIMATE FOR TEAR-DOWN, DAMAGE REPAIR AND REASSEMBLE ONLY.

08-20-98  JIM MATTHEWS AT LYCOMING (12 YEARS) REAFFIRMED THAT LIFTER STYLE DOES NOT MATTER. BUT IF YOU REPLACE ANY LIFTERS WITH NEW STYLE YOU SHOULD REPLACE ALL LIFTERS WITH NEW STYLE OTHERWISE ENGINE MIGHT RUN ERRATICALLY DUE TO DIFFERENT BLEED DOWN RATES. **BUT THIS WILL NOT CAUSE TAPPET BODIES TO BREAK.**

P.3

08-27-98   LEON CALLED TO FIND OUT WHAT WE ARE GOING TO PAY FOR. HE SAID METAL IN ENGINE SCORED CRANKSHAFT. HE HAS A LETTER FROM LYCOMING STATING THAT NEW STYLE LIFTERS WILL CAUSE TAPPET BODIES TO BREAK. HE WOULD NOT FAX ME A COPY OF THAT LETTER. HE SAID RIGHT ENGINE WAS RUNNING "FUNNY" WHEN HE BROUGHT IT IN. HE WANTS TO REMAIN AS AMMIABLE AS POSSIBLE. HE IS VERY ANXIOUS TO GET THE AIRPLANE FIXED.

08-27-98   I CALLED JIM MATTHEWS AT LYCOMING. I ASKED HIM TO FAX ME A COPY OF LEON'S LETTER STATING NEW STYLE LIFTERS WILL BREAK TAPPET BODIES. JIM WAS UNAWARE OF ANY SUCH LETTER AND SAID THAT HE WOULD BE VERY INTERESTED TO SEE IT. HE ASKED ME TO FIND OUT WHO SIGNED IT SO HE CAN GET CONFIRMATION FROM THAT PERSON.

08-27-98   I CALLED LEON AND SCHEDULED A MEETING FOR 11:00 AM MONDAY (08-31-98). LEON EXPRESSED CONFIDENCE IN BEING ABLE TO GET THIS WORKED OUT.

08-31-98   LEON CALLED TO ADVISE THAT HE WILL BE LATE. RESCHEDULED MEETING FOR NOON.

08-31-98   JOHN WRAGA, BILL YOUNG AND MYSELF MET WITH LEON SHABBOT. LEON PRESENTED LETTER FROM LYCOMING (WRITTEN BY ROBERT OHNMEISS) TO DON FREEMAN AT AVIATION ENGINES BASICALLY AGREEING WITH DON'S OPINION THAT MIXING OF OLD AND NEW STYLE LIFTERS WILL CAUSE HYDRAULIC LIFTER BODIES TO BREAK. I FAXED A COPY OF THIS LETTER TO JIM MATTHEWS AT LYCOMING. I ASKED JIM TO LOOK INTO THE POSSIBILITY OF SENDING HIS SOUTHEAST REGIONAL SERVICE REP TO AVIATION ENGINES TO GET A FIRST HAND LOOK AT THE BROKEN LIFTER BODIES.

08-31-98   I CALLED JIM BROOKS (LYCOMING REGIONAL MANAGER). HE'LL CALL JIM MATTHEWS AND CONFER WITH HIM BEFORE COMMITTING TO COME OUT AND LOOK AT RIGHT ENGINE.

08-31-98   I CALLED DON FREEMAN AT AVIATION ENGINES HE SAID THAT THE CRANKSHAFT IS SCORED BUT IT WILL POLISH OUT. MAGNAFLUXING OF OTHER ENGINE COMPONENTS SHOWS NO DAMAGE. DON WILL NOT BE AT ALL APPREHENSIVE TO PUT THIS ENGINE BACK TOGETHER AND RETURN TO SERVICE. HE WILL SEND US TWO EACH OLD STYLE LIFTERS TO USE AS REPLACEMENTS IN RIGHT ENGINE.

08-31-98   JIM BROOKS CALLED. HE IS NOT GOING TO COME OUT. HE SUGGESTED WE PULL 3 CYLINDERS OFF ONE SIDE OF RIGHT ENGINE TO INSPECT ALL HYDRAULIC LIFTER BODIES FOR DAMAGE BEFORE REPLACING THE TWO NEW STYLE LIFTERS WITH OLD STYLE LIFTERS. THIS CAN BE ACCOMPLISHED WITH A LIGHT AND MIRROR ONCE THE CYLINDERS ARE REMOVED. REMOVING THE TWO NEW STYLE LIFTERS AND REPLACING WITH OLD STYLE IS OK AS LONG AS THE HYDRAULIC LIFTER BODIES ARE NOT DAMAGED. SEE SB1011H AND SI1182A.

P4

**08-31-98**  BILL YOUNG SAID REMOVAL OF THREE CYLINDERS IS NOT NECESSARY. HE CAN INSPECT HYDRAULIC LIFTER BODIES IN QUESTION BY PULLING PUSH ROD TUBES.

**09-01-98**  I CALLED JIM MATTHEWS AT LYCOMING. LEFT A VOICE MAIL MESSAGE FOR HIM TO CALL ME BACK WITH ANY WORD ON THE ROBERT OHNMEISS LETTER THAT I FAXED TO HIM.

**09-01-98**  JIM MATTHEWS CALLED. ROBERT OHNMEISS WAS RECENTLY TRANSFERRED TO ACCIDENT INVESTIGATION AND IS "TIED UP" WITH THE FAA SO HE COULD NOT BE REACHED FOR COMMENT. SEE SB1182A FOR INFO ON CAM AND ROCKERARMS. JIM WILL CALL BACK AFTER CONTACTING ROBERT OHNMEISS.