UNITED STATES DISTRICT COURT FILED
FOR THE DISTRICT OF MASSACHUSETTS CLERKS OFFICE

| | | |
|---|---|---|
| LEON SHABOTT | ) | 2006 DEC 11 P 1: 10 |
| | ) | |
| *Plaintiff* | ) | Civil Action No. |
| | ) | U.S. DISTRICT COURT |
| v. | ) | DISTRICT OF MASS. |
| | ) | 04-11575-JLT |
| MERCURY AIR GROUP, INC. | ) | |
| | ) | 11 December 2006 |
| *Defendant* | ) | |
| | ) | |
| AVCO CORPORATION, | ) | |
| LYCOMING DIVISION | ) | |
| | ) | |
| *Third Party Defendant* | ) | |

PLAINTIFF'S RESPONSE TO THE DEFENDANTS OPPOSITION TO THE PLAINJTIFFS RULE 60(B) MOTION FOR RELIEF FROM THE COURT'S 25 JANUARY 2006 JUDGMENT

Plaintiff Leon Shabott ("Shabott") has moved the Court pursuant to Rule 60(b) of the Fed. R. Civ. Proc. for relief from its 25 January 2006 order of dismissal. From the beginning of this case the Defendant has withheld discovery in violation of Court discovery order, has ignored or postponed Shabott's requests to schedual depositions of Michael Wasson, and has produced fabricated evidence to support their efforts at dimissing this case pursuant to statute of limitations argument. Shabott has petitioned the court pursuant to Red. R. Civ. 60(B) (1), (2), (3)

In regards to Rule 60(b)(1), Shabott diligently assembled all discoverable documents available to him and provided copies to the Defendant. The Defendant violated the Court's discovery orders by failing to supply the Defendants their financial records concerning his dealings with it. Shabott's excusable neglect was in not asking the Court at the time to compel the Defendant to produce said records. This was a direct result of his inexperience and pr se

status, and not based on any inexcusable negligence on his part. See Affidavit of Shabott 13 November 2006 ¶¶ 40, 43, 54 and the Court's 27 May 2006 Discovery Order (Attachment #1).

The definition of "excusable neglect" used by the Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 113 S. Ct. 1489 (1993) is directly applicable here: "The determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. ... These circumstances include "the danger of prejudice to the [nonmoving party]."

Rule 26 reads —

> (1) *Initial Disclosures.* Except in categories of proceedings specified in Rule 26(a)(1)(E), or to the extent otherwise stipulated or directed by order, **a party must, without awaiting a discovery request, provide to other parties:**
>
> **(B) a copy of, or a description by category and location of, all documents, electronically stored information, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims** or defenses, unless solely for impeachment;

Had the Defendant's attorney complied with Rule 26(a) (B) the information that eluded Shabott through no fault of his own would have been made available to him. The Defendant's attorney has no "excusable neglect" in deliberately ignoring not only the requirement of Rule 26 and his contumacy in refusing to obey the Court's discovery order constitutes "dirty hands" that prevents him from even raising an issue of Shabott's honest incompetence in being able to enforce the Court's discovery order against a sophisticated player deliberately seeking to evade having to provide Shabott required discovery.

In regards to his sough for relief pursuant to Rule 60(b)(2): Shabott recently was provided credit card records consisting of his monthly credit card statement for July 1998 ("1998 Credit card Bill"). The supplying of this and other relevant personal financial records to him after the

Court's judgment was literally an "act of god." The newly discovered evidence was in the possession of his disgruntled former spouse buried in a box labeled "work pictures." His son supplied it as a gift. The discovery was accidental. Shabott had no idea if any records still existed. Compelling his ex-wife to search for and surrender any potentially existing records was practically and legally impossible. Living in Vermont she is outside the Court's jurisdiction and a non-party. Shabott also believes that if pressed to produce any former property of his, she would have resisted compliance with any subpoena, including destroying the property to keep it out of Shabott's re-possession. See 5 December 2006 Shabott's Affidavit at ¶¶ 17. 19. 20. 21. 22.

In *Karak v. Bursaw Oil Corp.*, 288 F.3d 15 (1st Cir. 2002), the First Circuit ruled —

> "But a party who seeks relief from a judgment based on newly discovered evidence must, at the very least, offer a convincing explanation as to why he could not have proffered the crucial evidence at an earlier stage of the proceedings."

Shabott meets this test. Shabott had no knowledge of the existence or location of any additional records available to him. If he was aware of their existance he would have sought them out. Shabott's in his deposition testified that:

> "Yes, or stuff that could actually be in my ex-wife's possession that I may or may not be able to access" see Deposition of Shabott page 116 lines 15-16 attached hereto.

In regards to his claims for relief under Rule 60(b)(3): The conflict between reality and the Defendants paid witnesses' fabrications in the Wasson Affidavit and, its attached Notes, cannot be ignored by this court. Neither can the Defendant's attorney's contumacy direct violation of the Court's discovery orders in which he refused Shabott's requests to him to provide a date for Wasson's deposition and his refusal to supply the Defendant's relevant financial records to Shabott. See 13 November 2006 "Affidavit of Leon Shabott" at ¶ 48 and 5 December 2006 "Affidavit of Leon Shabott" at ¶¶ 12. 13. See also 11 December 2006

"Plaintiffs Petition For The Court Should Hold Show Cause Hearing To Determon Whether Michael Wasson Should Be Held In Contempt."

In *Anderson v Cryovac, Inc.*, 862 F.2d 910 (1st Cir. 1988) the First Circuit ruled that not merely fraud but attorney misconduct in discovery was grounds for relief under Rule 60(b)(3).

> "Failure to disclose or produce materials requested in discovery can constitute "misconduct" within the purview of this subsection. "

In *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978) the court ruled that —

> "Misconduct" does not demand proof of nefarious intent or purpose as a prerequisite to redress. For the term to have meaning in the Rule 60(b)(3) context, it must differ from both "fraud" and "misrepresentation." Definition of this difference requires us to take an expansive view of "misconduct." The term can cover even accidental omissions — elsewise it would be pleonastic, because "fraud" and "misrepresentation" would likely subsume it."

Additionally in *United States v. One Douglas A-26B Aircraft*, 662 F. 2d 1372, 1374-75 (11th Cir. 1981) —

> "to avoid redundancy, "misrepresentation" in Rule 60(b)(3) must encompass more than false statements made with intent to deceive). We think such a construction not overly harsh; it takes scant imagination to conjure up discovery responses which, though made in good faith, are so ineptly researched or lackadaisical that they deny the opposing party a fair trial. Accidents — at least avoidable ones — should not be immune from the reach of the rule. Thus, we find ourselves in agreement with the Fifth Circuit that, depending upon the circumstances, relief on the ground of misconduct may be justified "whether there was evil, innocent or careless, purpose." *Id.* at n 6.

See also *Bros. Inc. v. W.E. Grace Manufacturing Co.*, 351 F.2d 208, 211 (5th Cir. 1965); *National Association of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557 (N.D.Cal. 1987) ("Where one party wrongfully denies another the evidence necessary to establish a fact in dispute, the court must draw the strongest allowable inferences in favor of the aggrieved party.") In the Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2870, at 419-20 (1995): ("By contrast, fraud perpetrated in the course of litigation interferes with the process of

adjudication, and it is this kind of litigation-related fraud that principally concerns Rule 60(b)(3)'s fraud provision. Once such fraud is proved, the judgment may be set aside merely upon the movant's showing that the fraud substantially interfered with [the movant's] ability fully and fairly to prepare for, and proceed at, trial.'"}; *Tiller v. Baghdady*, 294 F.3d 277, 280 (1st Cir. 2002) (quoting *Anderson*, 862 F.2d at 926). This is a far less demanding burden than showing that a different result would probably have ensued.").

Shabott did not have access to the 1998 Credit Card Bill and the other newly discovered records until November 2006. The Defendant did have ready access its relevant financial records and its attorney simply refused to produce them and certainly not out of excusable *pro se* incompetence. At no point in the proceedings has the Defendant denied a payment was made to it on 16 July 1998 for the work they did to Shabott's aircraft, they simply refused to admit the payment was made and violated the Court's discovery order in refusing to supply the Defendant's financial records that would have supplied evidence to the said payment. Shabott alleges that the Defendant and its attorney knew that the payment had been made, that the date of the payment and test flight was as Shabott's Complaint claims, on 16 July 1998. The Defendant and his attorney deliberately sought to conceal this evidence by deliberately violating the Court's discovery order and withheld it from production with the few documents that it actually did supply Shabott.

The Defendant's records of the 16 July 1998 payment and other relevant non-disclosed financial records of the Defendant would provide critical substantiation of the date of 16 July, 1998 at the date that Shabott paid his bill, test flew his Airplane and then returned it to the Defendant. The Defendant's deliberately withheld financial records would on their own indisputably show that Shabott's breach of contract claims against the Defendant accrued on 16 July 1998 and not 13

July 1998, as alleged in Wasson's seemingly fraudulent affidavit. This is the date that Shabott as maintained all along, starting in his Complaint.

Shabott alleges that the Defendant willingly adopted the fabricated Notes and false claims of Michael Wasson to establish a fictitious date in order to support its Motion for Summary Judgment. The assertion of the date of 13 July 1998 — one day short of the date needed for Shabott to maintain his claims under the statute of limitations — is so convenient as to be facially suspect.

These said deceptive and fraudulent practices of the Defendant and its attorney interfered with Shabott's ability to prevail against the Defendant's motion for summary judgment. If the Defendant had supplied the required discovery to Shabott, he would have been able to demonstrate that it was a material issue of fact on whether the date of the payment of his bill and test flight of the Airplane was either 16 July 1998 as he maintained or the fabricated date of 13 July 1998 attested to by Wasson. On that point alone, Shabott would have been able to successfully oppose the Defendant's second summary judgment motion. Further, if he had been supplied the said financial records of the Defendant the merits of Shabott's claim of a test flight etc. on 16 July 1998 would have never been disputed by the Defendant and he would never have been subject to the cost and time he was forced to expend to defend against the Defendant's second summary judgment motion.

## Summary

The Court's 25 January 2006 Judgment was unfairly obtained by the Defendant and the Defendant has "dirty hands" in its dealings with the Plaintiff and the Court. It has deliberately refused to supply required discovery under Rule 26 and has deliberately failed to comply with the Court's discovery order by refusing to supply required financial records of the Defendant and

refusing to schedule a date for Wasson's deposition by Shabott. Shabott's incompetence in enforcing the Court's discovery rules and orders owing to his pro se incompetence constitutes excusable negligence. The Defendant's attorney's deliberate refusal to actually comply with Rule 26 discovery requirements and the Court's discovery orders constitutes deliberate misconduct. His "dirty hands" prevent him from raining any discovery violation against the well meaning and formally incompetent Shabott.

The 1998 Credit Card Bill and other personal financial records of Shabott constitute "newly discovers evidence" not formally available to Shabott and which he did not even know still existed. These documents would allow Shabott — if it grants his Rule 60(b) motion — to successfully defeat the Defendant's second summary judgment motion. By just using the 1998 Credit Card Bill, Shabott could establish a genuine issue of material fact whether the test flight took place on 16 July 2006 as he maintains in his Complaint. This date falls within the period required under the statute of limitations for his breach of contract claim against the Defendant to accrue. This demonstrated by admissible evidence, Shabott would be able to successfully oppose the Defendant's second motion for summary judgment.

There is no question that the Defendant's attorney refusal to supply the Defendant's relevant financial records to Shabott and his refusal to supply Wasson on any date to be deposed by Shabott constitutes misconduct. Obviously if the Defendant's had in fact supplied their relevant financial records to Shabott, he would have been able to use these documents to demonstrate a material issue of fact existed that 16 July 1998 was the date that his breach of contract claims against the Defendant accrued. Further, Wasson's perjury in attesting to the authenticity of the notes attached to his affidavit — alleging 13 July 1998 as the date Shabott's breach of contract claims accrued against the Defendant — provided the sole means of the

Defendant's succeeding in their second summary judgment motion against Shabott. If Wasson's perjured testimony was not available to the Defendant, it could possibly be seen by the Court as having any basis to succeed in its second motion for summary judgment.

The Plaintiff asks the Court to grant his requested relief.

BY:

_____
Leon Shabott, Plaintiff
4137 Center Pond Road
Newark, VT 05871
802.723.5487

*Pro Se*

### CERTIFICATION OF SERVICE

I certify that I have served on 11 December 2006 a copy of this motion on the Defendant and Third Party Defendant's attorneys respectively VIA U. S. First Class Mail and E-Mail.

_____
Leon Shabott, Plaintiff

*Attachment 1*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**LEON SHABOTT**

V                               CIVIL ACTION No. 04-11575 -JLT

**MERCURY AIR GROUP, INC.**

### DISCOVERY ORDER

TAURO,.J.:

On or before, June 27, 2005 the parties shall have exchanged and reviewed (1) all documents in accordance with Local Rule 26.2(A), and (2) sworn statements in accordance with Local Rule 26.1(B), and (3) a list of persons they wish to depose. A list of the proposed deponents should be presented to the Court at the scheduling conference.

In addition, the parties shall, without awaiting a discovery request, provide to other parties:

(A) the name and, if known, the address and telephone number of each individual likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings, identifying the subjects of the information and

(B) a copy of, or a description by category and location of, all documents, data compilations, and tangible things in the possession, custody, or control of the party that are relevant to disputed facts alleged with particularity in the pleadings.

No additional discovery shall take place without further order of the court.

Counsel shall notify the court in writing, no less than (5) days prior to the scheduled conference, of pending motions. Any motion not brought to the court's attention (5) days prior to the scheduled conference will be deemed denied as moot.

The court does not accept any letters requesting decision or action. Any such request must be in the form of a motion. Letters submitted for information purposes only must be addressed to Zita Lovett, Deputy Clerk.

IT IS SO ORDERED.
05/27/05

By the Court,
/s/    Zita Lovett,
**DEPUTY CLERK**

Attchent Page 1

Volume:   I

Pages :   1-210


UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 04-11575-JLT

- - - - - - - - - - - - - - - - - - - - - - - -

LEON SHABOTT,                                    :

      Plaintiff,                              :

  V.                                              :

MERCURY AIR GROUP, INC.,                          :

      Defendant/Third-Party Plaintiff,        :

  V.                                              :

AVCO CORPORATION, LYCOMING DIVISION,              :

      Third-Party Defendants.                 :

- - - - - - - - - - - - - - - - - - - - - - - -

      Deposition of LEON SHABOTT, a witness called by counsel for the Defendant/Third-Party Plaintiff, taken pursuant to the applicable provisions of the Massachusetts Rules of Civil Procedure, before Rosemary F. Grogan, a Registered Professional Reporter, CSR No. 112993, and Notary Public in and for the Commonwealth of Massachusetts, at the Law offices of Looney, Cohen,

ROSEMARY F. GROGAN & ASSOCIATES
(781) 749-0907

99050d2d-fafc-42b2-9710-e67e3cad8aa2

1  the statements by Mr. Wasson contained in the
2  attachments in Exhibit 4?
3        A.   I can't conclusively say I do not. I haven't
4  gone through fully my discovery line items by line
5  items.
6        Q.   And by Discovery, you mean Exhibit 2 in this
7  case, correct?
8        A.   Exhibit 2 or in my possession at this time
9  that are obtainable.
10       Q.   And by Obtainable and in your possession at
11 this time, you mean these boxes of documents that you
12 haven't yet fully gone through that you think you're
13 likely to go through them by the end of June of this
14 month?
15       A.   Yes, or stuff that could actually be in my
16 ex-wife's possession that I may or may not be able to
17 access.
18       Q.   Are you aware of any documents in Exhibit 2
19 that would refute any of the statements made by
20 Mr. Wasson and the attachments to Exhibit 4?
21       A.   I can't say.
22       Q.   Well, why don't you go through the documents
23 in Exhibit 2 and find any documents which you believe
24 refute any of the statements by Mr. Wasson and the

1   correct?

2       A.   That's correct.

3       Q.   Now, do you see in Wasson's affidavit

4   paragraph eight -- before I get to that.

5            On the day that you picked up the plane

6   and flew it, is that the same day that you experienced a

7   problem with the engine?

8       A.   Yes.

9       Q.   So you only flew it one time?

10      A.   Yes.

11      Q.   Where were you flying on that day?

12      A.   I was orbiting Hanscom field.

13           MR. LANDERS:   Orbiting?

14           THE WITNESS:   Orbiting.

15      Q.   For what purpose?

16      A.   It was a test flight.

17      Q.   You were just taking a test flight?

18      A.   Correct.

19      Q.   And how long was this test flight?

20      A.   I don't recall exactly.  It was somewhere --

21  probably takes 10 minutes, five minutes to run up the

22  airplane, bring it out to the ramp to the threshold,

23  take it off, climb up to 3,000 feet.  It was probably a

24  15-minute test flight.

```
 1   without having gotten any of this other stuff yet.  See,
 2   at that point I still hadn't even had access to my
 3   aircraft folder.  It was also stuffed in the box
 4   somewhere.
 5               And so it was from my recollection.  And
 6   I actually thought I was being pretty responsible that I
 7   didn't exactly know the date, but I knew it was right
 8   around that time.
 9        Q.    But you don't have any calendar or tell you or
10   anything like that?
11        A.    I do have stuff somewhere, if it still exists.
12        Q.    But you haven't produced it?
13        A.    Correct.
14        Q.    And so in paragraph eight, Mr. Wasson states:
15   On July 13, 1998, Shabott -- and I'm talking about
16   paragraph eight of Exhibit 4.
17        A.    Mm-hmm.
18        Q.    July 13, 1998, Shabott again returned the
19   airplane to Mercury for further service.
20        A.    I have no physical evidence to produce to you
21   at this time.
22        Q.    You said you knew you were running out of time
23   based on the Statute of Limitations.  How is it you knew
24   what the Statue of Limitations were or that you were
```