UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LEON SHABOTT | ) | 2006 DEC 11  P 1: 13 |
| | ) | |
| *Plaintiff* | ) | Civil Action No. |
| | ) | U.S. DISTRICT COURT |
| v. | ) | DISTRICT OF MASS. |
| | ) | 04-11575-JLT |
| MERCURY AIR GROUP, INC. | ) | |
| | ) | 5th December 2006 |
| *Defendant* | ) | |
| | ) | |
| AVCO CORPORATION, | ) | |
| LYCOMING DIVISION | ) | |
| | ) | |
| *Third Party Defendant* | ) | |

## AFFIDAVIT OF LEON SHABOTT

I Leon Shabott do hereby swear and depose as follows –

1.   I am a United States citizen and I am over the age of eighteen.

2.   In the summer of 1998 my family, my wife at the time and my two boys, were in Germany, they returned in late August, 1998

3.   Upon their return, we hastily packed up our household (including my financial records for June and July of 1998) in Watertown, Massachusetts and moved to Vermont.

4.   In 1999 my wife and I were separated and she became very embittered, she was having an affair and I was asked to move out, I took residence in an apartment in the center of town. I was able to bring some possessions with me.

5.   My wife and I were divorced in 2001. The divorce decree stated that everything in her position at that time was hers. Her mental instability and often-violent

behavior made communication with her often impossible. She developed vengeful demeanor and to this day we do not speak or communicate, in fact we are not allowed to by court order .

6.   My ex wife has not allowed me on her property since long before I filed suit. There was a time when all visitation pick up and drop offs were at the Orange County sheriffs department in the center of Chelsea Vermont, after she attacked me during a visitation pick up.

7.   Since 2003, I have spent ~$15,000.00 on attorney's fees and litigation costs for visitation modification and enforcement and other family court proceedings.

8.   In late October, 2006, I picked up my sons for my weekend visitation at the bottom of their mothers driveway. My 16-year-old son had with him a cardboard box with "Work Pictures" written on it. We drove to my home in Newark, Vermont and upon opening the box found piles of work pictures from years past. Under the pictures and envelopes of negatives were mixed receipts, bills and bank statements. Sometime after the weekend visitation I looked carefully at the papers and discovered my credit card receipts and phone records which have been submitted into evidence.

9.   In 2002 when I went to visit Mike Wasson at the old Mercury hanger He gave me a file folder and said was "the entire file on my airplane".

10.   During a hearing on December 12, 2004 Mercury's attorney complained that my discovery was incomplete, Judge Tauro told me that both sides were obligated to provide everything available that could help them with their case, I complied and supplied Mercury's attorney with almost 200 pages of documents, which I also filed with the court. I thought Mercury at the time Mercury had provided me with everything they had available, it did not occur to me Mercury was withholding

available information such as financial record, copies of agreements or that they
provided only one page of a multiple page agreement.

11.    In Mercury's ~34 pages of discovery they provided me they included an
agreement for me to allow them to store my plane outside, I now recall this was a
multiple page agreement, Mercury only provided the last page.

12.    I stated in my complaint that the day of the test flight was on July 16th, 1998 and
that the repairs were fully paid for before the test flight.

13.    On July 16th, 1998 Michael Wasson Mercury demanded full payment to date
before the plane could be test flown, He said something like "Mercury's policy is
that we be paid in full before anyone can fly a repaired plane, in case someone just
flies off". I gave him my credit card, he went away into the hanger, I assume to his
office in the back, a short time latter he came out and retuned my card to me with
a slip for me to sign, I remember I was a little nervous as I gave him the card
wondering if I had enough credit limit to pay for repairs as I was not planning to
pay anything that day; I was relived when came back with the charge slip that the
credit card company approved the $4,000.00+ charge.

14.    During a hearing on February 14th, 2005 Judge Tauro ordered that we depose
Michael Wasson and John Wrega, among others. I repetitively called and asked
Mercury's attorney to schedule the depositions of them as well as the other
witnesses who resided in New York, Alabama, California and Florida, He kept of
saying he wanted to depose me first. I was under the belief that all parties had to
be in agreement as to when and how the depositions were to take place, as it was a
court order.

15.    I asked Mercury's attorney to produce the original hand written
"Contemporaneous Notes" of Michael Wasson, he did not produce them.

16.    During a hearing on July 5th, 2005 Judge Tauro ordered the deposition of the engine Expert from Aviation engines, the deposition was scheduled by phone with the expert, Mercury's Attorney, Lycoming's attorney and myself all agreeing to a date, time and place affirming my belief that a deposition could only be done by mutual agreement.

17.    My Ex wife is not an American citizen, she is a citizen of E.C, a German National From 1998 till the present she lives in Chelsea, Vermont, over 100 miles from Boston Massachusetts. She has no business or ongoing social dealings in the state of Massachusetts. She is a non-party to this lawsuit. My Ex wife would be hostile to a subpoena, she would not aid me in any way. I had no knowledge that she actually had any of my old records, even if I thought she had any records she may have destroyed them rather then give them to me.

18.    I never knew my ex-wife had any records, my ex wife exhibits hostile and violent behavior and I am not lawfully able subpoena her.

19.    I had many credit cards in fact I had so many, all of which are closed, I have idea how I could find out what companies I had credit cards with and which credit card I used to make the Mercury payment on July, 16th, 1998. I had no reason to subpoena my phone records, until I found them in late October 2006 I had no idea they could have information relevant to my lawsuit.

20.    I had multiple Bank accounts at different banks; the bank used for the checks I found is no longer in existence.

21.    I never knew these records still existed or if so, where they were located. I never knew they were in my ex-wife's house. It is illegal and morally corrupt ask my 13-or16 year old sons to go through their mother's possessions, and have them bring them to me.

22.   My ex-wife and I are not allowed to communicate by order of a
        Vermont court with very limited exceptions.

23.   I have other payments to Mercury made on the same credit card. All
        of them were posted the day of the transaction.

24.   The telephone records and receipts do prove I was not in the state of
        Massachusetts at ant time I could have performed the test flight on
        Monday, July 13th, 1998 and prove my claim it was on Thursday,
        July 16th, 1998

25.   On 4 December, 2006 I consulted with Mercury's attorney David C. Aisenberg. I
        asked about the location of the original "Wasson Notes". He old me he did not
        have them, did not know the location of notes. He told me he had never actually
        seen or had possession of the original notes only photocopies.

Signed under the pains and penalties of perjury this Eleventh Day of December

In the year Two Thousand and Six.

Leon Shabott, Plaintiff
4138 Center Pond Road
Newark, VT 05871
802.309-8707

*Pro Se*