UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2007 JAN 11  A 10: 10

| | | |
|---|---|---|
| LEON SHABOTT | ) | |
| *Plaintiff* | ) ) ) | Civil Action No. |
| v. | ) ) | 04-11575-JLT |
| MERCURY AIR GROUP, INC. | ) ) | |
| *Defendant* | ) ) | 11th January 2007 |
| AVCO CORPORATION, LYCOMING DIVISION | ) ) ) ) | |
| *Third Party Defendant* | ) | |

### AFFIDAVIT OF LEON SHABOTT

1. I Leon Shabott do hereby swear and depose as follows –

2. I am a United States citizen and I am over the age of eighteen.

3. In mid December 2004 I asked Mercury's attorney David C. Aisenberg to see the original "Wasson Notes", he said he "would see what he could do". He never produced the original notes and has continued to do nothing to the present day.

4. The Court ordered Discovery, F.R.C.P 26 on 11 March 2004, 14 February 2005 and on 27 May 2005. Mercury's Attorney has never provided me, to this day any names, addresses and phone numbers of anyone, in violation with F.R.C.P 26 (A).Mercury's Attorney has never produced the names of the personal who worked and or cared for my plane, the office personal responsible for billing and credit card processing of my payments, the name of their bank where my payments were deposited and the distributor they purchased the wrong parts from. Mercury's Attorney has never provided me, to this day documents and data in violation

with F.R.C.P 26 (B). Mercury's Attorney has never produced bank deposits of my transactions, the time billing slips they used to determine who worked on my airplane when, and for how long. Phone records showing call made to myself, or Lycoming tech support, who they claim gave them false advise. Or my written agreements with them and or complete copies of my written agreements which they have fraudulently withheld, the invoices for the parts the put into my airplanes engine, including the wrong parts and the date(s) they ordered and received the parts used in their faulty repairs.

5.   In mid-February 2005 I began to ask Mercury's attorney David C. Aisenberg to depose Michael Wasson and John Wrega, he refused my requests and never did schedule a date for these depositions. I was confounded by his refusal, because the court had ordered it and in my inexperience did not, beyond my repetitive requests, know how to compel him to produce Wasson for deposition. Out of my inexperience, I was under the belief by his statements and actions that he needed to be in agreement as to when the depositions were to take place. Because he was an attorney and an officer of the court I believed he would obey the courts discovery order and eventually provide Wasson. As it turned out he played on my naivety and successfully evaded my deposing Wasson. Aisenberg dragging out my deposition for almost two months, postponing a status conference till mid September 2005 and announcing he would be filling a second Motion for Summary Judgment and having all further discovery stayed for 4 months till after his summary judgment filling. Mercury was granted their second motion for Summary Judgment, never having produced Wasson for deposition.

6.   I asked Mercury's attorney David C. Aisenberg for any additional information or documents they may have about my transactions or dealings with Mercury, he never did produce anything.  Around may of 2005 after looking at a rule book, I asked Mercury's attorney David C.

Shabott V. Mercury Air Group, Inc. 11 January 2007 Affidavit of Leon Shabott    3

Aisenberg for a copy of any insurance agreements Mercury had to that would be available to satisfy my damages in this case, under F.R.C.P 26 (D) he told me "he refused to produce them and would only produce a letter saying such insurance exists if forced by the court to do so".

7.   On 4 December 2006 I consulted with Mercury's attorney David C. Aisenberg. I asked about the location of the original "Wasson Notes". He old me he did not have them, did not know the location of notes. He told me he had never actually seen or had possession of the original notes only photocopies.

8.   In a telephone conversation with Mike Wasson about the middle of December in 2004 Mike Wasson told me He and Mr. John Wrega had " become paid consultants by Mercury to help them with their defense against my lawsuit."

9.   In 2002 when I went to visit Mike Wasson at the old Mercury hanger He gave me a file folder and said was "the entire file on my airplane". The file contained two "shop" copies of multiple duplicate invoices and some "Mercury Air Parts Requisition" forms. The file did not have any handwritten notes or contemporaneous records. Mike Wasson did not offer any additional papers nor did he say he might have other records in another location.

10.  I have reviewed the "contemporaneous records" of Michael Wasson in preparing to write this affidavit. I have found both inaccuracies and omissions in the records he provided and in his sworn Affidavit. In the records Mike Wasson has the date he found metal in my aircrafts engine to be 7-13-98 and the day he notified me of that fact to be 7-14-98. These dates are not true. The date I performed a test flight while Mercury was performing extensive repairs was 7-16-98 and to my best knowage and belief the date I was told he found metal in my aircrafts engine was 7-20-98.

11.  The "contemporaneous records" of Michael Wasson have missing gaps of accepted dates and omit any reference to the meeting he attended in mid July 1998 where

Shabott V. Mercury Air Group, Inc. 11 January 2007 Affidavit of Leon Shabott                                    4

Mercury promised to pay for all repairs; if the damage was deemed to be their fault by the engine expert they shipped the motor to.

12.    The "contemporaneous records" of Michael Wasson state that on 8-27-98 that *"per J.W. based on our investigation damaged tappet bodies were not caused by anything we did"*. Mercury never said this to me this, verbally or in writing, to this day nor did Mercury tell the engine expert, that they sent the motor to which was in contradiction to his findings and written report.

13.    The "contemporaneous records" of Michael Wasson omit any reference to the meeting he attended on or about March 30th 1999 where Mercury promised to take responsibility for the care of my aircraft if I allowed them to store it outside in a tie down spot instead of the safety of the Mercury maintenance hanger till there insurance company would pay to repair my plane.

14.    The "contemporaneous records" of Michael Wasson omit any reference to the second motor I brought to them to help get my airplane flying again while they waited for their insurance in the summer of 2000.

15.    The "contemporaneous records" of Michael Wasson omit any reference to the date or fact that my aircraft sustained severe airframe damage due to their not maintaining the rudder lock, nor do the records refer to the date of fact as to when I discovered the damage.

16.    In November of 2006 I called Michael Wasson at his workplace at MIT's hanger at Hanscom field, Mercury's old location. I told Michael Wasson about the newly discovered credit card bills and supporting evidence I found that conflicted with his notes and Affidavit. I asked Michael Wasson "where he kept the notes all that time". I also asked him how, after all those years did he find his handwritten notes only after mercury offered him money for his testimony" and I asked him about the false dates in the notes. His speech became nervous and he stammered something about he could not remember where the notes were he said, and I quote "Maybe they were in a box or something" He then told me "not to call him at his workplace again".

`17.    I was deposed by Mercury's attorney David C. Aisenberg first on June 2nd 2005 again on June 5th 2005 and a third time on July 28th 2005. I was not informed at any time that I was not required to be subjected to more than one day of deposition. Aisenberg in no uncertain terms commanded me to report to deposition a second time and again a third time. I had to travel

from Vermont to attend the depositions. One of the depositions was cancelled via telephone while I was enrout to the deposition; I received notice while already in Massachusetts while traveling on the highway from Vermont.

18.     On 5 July 2005 the court ordered the deposition of the Engine Expert Don E. Freeman. Before the Deposition was to take place Mercury and Lycoming scheduled and inspection of the disassembled motor in his custody. I notified them both when I was to arrive late. The inspection took place without me being present. I was told an expert from Lycoming was flown in to conduct the inspection, notes and pictures were taken. I did not nor have I to this day ever been given copies of notes or the pictures or told who it was who performed the inspection in violation of F.R.C.P Rule 26.

Signed under the pains and penalties of perjury this Eleventh Day of January In the year Two Thousand and Seven

Leon Shabott, Plaintiff
4138 Center Pond Road
Newark, VT 05871
802.309-8707
*Pro Se*