UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2007 FEB 21  P 4: 4!

U.S. DISTRICT COURT
DISTRICT OF MASS.

LEON SHABOTT
*Plaintiff*

V.

MERCURY AIR GROUP, INC., *et al.*

*Defendants*

Civil Action No. 06-1541

PLAINTIFF'S REVISED OPPOSITION TO DEFENDANT'S SECOND MOTION FOR
SUMMARY JUDGMENT

21 February 2007

Leon Shabott
4138 Center Pond Road
Newark, VT 05871
Cell: 802.309.8707

*Pro Se*

Case 1:04-cv-11575-JLT   Document 91   Filed 02/21/2007   Page 2 of 14

Shabott v. Mercury Air Group Inc. v. Avco Corp. Lycoming Div Plaintiff's Revised Opposition to Defendant's Second Motion for Summary Judgment . Civ. Act. No. 04-11575-JLT

2

**Plaintiff's Revised Opposition Against the Defendant's**
**Second Motion for Summary Judgment**

This is the Plaintiff's revised opposition ("Opposition to Summary Judgment") to the Defendant Mercury Air Group's ("Mercury Air") second motion for summary judgment ("Summary Judgment Motion"). The Court granted the Summary Judgment Motion on 25 January 2006 and entered a final judgment dismissing Shabott's claims against Mercury Air only on one theory of law — that the filing of his claims against Mercury Air was time barred by the applicable statute of limitations.[1] See Appendix tab 15 at 16, Docket of Shabott v. Mercury Air, 04 – 11575-JLT (D, Mass 2004).

Shabott subsequently filed a notice of appeal and a Rule 60(b) motion with the Court for a relief from its prior judgment. He also filed a petition for a hearing to determine if a Michael Wasson should be held in contempt for knowingly making false statement in an affidavit filed by the Defendant and in so doing perjured himself. All of these said matters are still pending before the respective courts.

Shabott is filing his Opposition to Summary Judgment in support of his said Rule 60(b) motion that is still pending before the Court.

---

[1] See Court 25 February 2006 memorandum in support of his final judgment dismissing Shabott's claims against Mercury Air.

Case 1:04-cv-11575-JLT   Document 91   Filed 02/21/2007   Page 3 of 14

Shabott v. Mercury Air Group Inc. v. Avco Corp. Lycoming Div Plaintiff's Revised Opposition to Defendant's Second Motion for Summary Judgment . Civ. Act. No. 04-11575-JLT

3

## Plaintiff's Statement of Claims Against the Defendant

Shabott commenced his civil action on 14 July 2006. His Complaint states that he entered into a verbal agreement with the Defendant to repair his twin-engine Airplane that he had recently bought second-hand from its prior owner.

The Complaint raises numerous claims of injury against Mercury Air for its refusal to complete repairs on his twin-engine Airplane pursuant to a verbal agreement that he entered into Mercury with in June 1998 ("First Verbal Contract").

The Complaint claims that Mercury Air caused thousands of dollars of structural damage to his Airplane from its failure to comply with a separate verbal agreement that Shabott entered into with Mercury Air 10 months later in 1999 after it wholly abandoned any effort to conduct any further contracted repair on Shabott's Airplane and made clear to Shabott that it had no intention of doing any further repair work on his Airplane, especially under the terms of the First Verbal Contract. At this time it started billing Shabott thousands of dollars for storage of his Airplane in its hanger after Shabott continued to leave his Airplane on its property — with Mercury Air now considering the continued presence of Shabott's Airplane on its property to be a trespass ("Storage Contract").[2] The Storage Contract allowed Shabott to store his airplane on the Defendant's property without being charged rent and with the Defendant supply some minimal preventive care for the Airplane while it was so stored. In return Shabott would not hold Mercury Air liable for possible damage to his plane from the weather, vandalism from a third party as per his previose storage agreement, or use the storage of his Airplane outside the hanger

---

[2] Starting in March 1999 Mercury Air considered Shabott's Airplane to be simply in storage and taking up needed space. It started billing for storage of his Airplane under the standard terms and going rates it offered to anyone simply wanting to "hanger" their airplane at its facility.

Case 1:04-cv-11575-JLT   Document 91   Filed 02/21/2007   Page 4 of 14

Shabott v. Mercury Air Group Inc. v. Avco Corp. Lycoming Div Plaintiff's Revised Opposition to Defendant's Second Motion for Summary Judgment . Civ. Act. No. 04-11575-JLT

4

as a basis for any future legal action. The required minimal maintenance on the Airplane was all that was required by Mercury Air. See Complaint 14 July 1998

### Plaintiff's. Statement of Undisputed Facts

1. The date of the Test Flight and the date of the partial payment on the Verbal Contract is on 16 July 1998. See Shabott Affidavit 16 February 2007 ¶ 8

2. The Plaintiff entered into a Verbal Contract with Mercury Air in Late June of 1998 to do mechanical and electrical work on his Airplane in order to keep it airworthy as required by applicable FAA regulations. See Shabott Affidavit 16 February 2007 ¶ 8

3. Shabott did a Test Flight of the Airplane on the same date he made a partial-payment to Mercury Air for ongoing mechanical and electrical repair work up to the date of the Test Flight, on 16 July 1998. See Shabott Affidavit 16 February 2007 ¶ 8

4. Mercury Air had not completed the work on the Airplane that it was required to do under the Verbal Contract by the date of the Test Flight and the Test Flight was conducted at Mercury Air's request by Shabott in order for it to evaluate the status of the mechanical and electrical repairs on the Airplane up to the date of the Test Flight. See Shabott Affidavit 16 February 2007 ¶ 13

5. The mechanical and electrical problems of the Airplane that Shabott discovered during the Test Flight — the slight roughness of the *right* engine and the failure of the *left* engine Exhaust Gas Temperature ("EGT") gauge — was not directly linked to or otherwise could be associated with the catastrophic failure of the *left* engine that employees of Mercury Air discovered at some point after Shabott's Test Flight. See Shabott Affidavit 16 February 2007 ¶ 9

6. At no point after the Test Flight — and to the present day — has any employee of Mercury Air examined the Aircrafts right engine in order to determine the source of Shabott's report of its rough running. See Shabott Affidavit 16 February 2007 ¶ 12, Attachment 1

7. At no point after the Test Flight — and to the present day — has any employee of Mercury Air examined the Airplane's EGT gauge in order to determine if it was functioning properly on the day of the Test Flight. See Shabott Affidavit 16 February 2007 ¶ 12

8. After Shabott ended the Test Flight of the Airplane Mercury continued to repair the plane under the verbal contract. They continued until it was discovered the left engine had sustained serious damage that was obviously the fault of Mercury. See Shabott Affidavit 16 February 2007 ¶ 16

The Saenger Org. Inc v. Nationwide Inc. Licensing Assoc. Inc. 119 F. 2d 55, 64 (1st Cir. 1997) Fall River housing Auth v. H. V. Collins Co. 604 NE2d 1310,1314 (Mass 1992) Catrone v. Thoroughbred Racing Assn of N. Am Inc, 929 F2d 881,885 (1st Cir 1991)

Case 1:04-cv-11575-JLT   Document 91   Filed 02/21/2007   Page 5 of 14

Shabott v. Mercury Air Group Inc. v. Avco Corp. Lycoming Div Plaintiff's Revised Opposition to Defendant's Second Motion for Summary Judgment . Civ. Act. No. 04-11575-JLT    5

### Plaintiff's Statement of Material Issues of Fact

1. Whether or not the terms of the Verbal Contract were that Mercury would maintain Shabott's aircraft in accordance with FAA regulations and the applicable laws of the Commonwealth of Massachusetts and the United States of America.

2. Whether or not the Verbal Contract was not consummated or ended at the date that Shabott was informed of the engine catastrophe and at the same time that the Defendants refused to rebuild the engine with new parts at no cost to Shabott.

3. Whether or not Mercury Air's new verbal contract for storing the aircraft outside ("Storage Contract") had to do with maintaining the aircraft and the original Verbal agreement. Or was it a separate verbal contract initiated by Mercury for Mercury's benefit.

4. Whether or not Mercury Air breached the Verbal Contract by refusing to pay for the costs of the inspection, pay for the return of the engine, and then repairing the engine (including the costs of new replacement parts) and abandoning the Airplane when it sold its operation to another company.

5. Whether or not Mercury Air performed negligent repair work on both of the Airplane engines and then ran the left side engine for several hours causing the failure of numerous engine parts resulting metallic pieces to be distributed throughout the entirety of this engine.

6. Whether the sub-standard performance of the Airplane during Shabott's Test Flight (i. e. non-functioning Exhaust Gas Temperature Gauge and the its rough running right engine) was in anyway indicative or connected with the subsequent catastrophic failure of the left engine.

7. Whether Shabott and Mercury Air entered into a separate verbal contract to have the Airplane moved from being inside Mercury Air's hanger at Hanscom Field MA. to then storing it outdoors on Mercury Air's property — without any ongoing storage fees and with Mercury obligated to prevent expectable damage from its being stored this way.

8. Whether the June 1998 Verbal Contract between the parties for the repair of Shabott's Airplane was NOT consummated by Shabott's partial-payment to Mercury Air for work in did on the Airplane up to the date of the Test Flight.

Case 1:04-cv-11575-JLT   Document 91   Filed 02/21/2007   Page 6 of 14

Shabott v. Mercury Air Group Inc. v. Avco Corp. Lycoming Div Plaintiff's Revised Opposition to Defendant's Second Motion for Summary Judgment . Civ. Act. No. 04-11575-JLT

6

### Plaintiff's Response to Defendant's Statement of Undisputed Material Fact

1. *On or before June 1998, the plaintiff Leon Shabott purchased a Beechcraft twin bonanza airplane ("Airplane") for $35,000. See Deposition of Leon Shabott Affidavit of David Aisenberg pp 23, 25.*

   This is true.

2. *On or about 24 June 1998, Shabott "contracted Mercury" to do routine service on his Airplane. Complaint at ¶ 5. Affidavit of Michael Wasson. §§ 5–6.*

   This is true.

3. *Shabott acknowledges that he has no reason to dispute that the date he delivered the plane to Mercury was 24 June 1998. Shabott Deposition at pp 171-172.*

   This is true.

4. *Mercury made some repairs to the Airplane, including the installation of hydraulic lifters in both engines, Wasson Affidavit at § 6.*

   This is accurate.

5. *Mercury returned the Airplane to Shabott on or before 13 July 1998. Wasson Affidavit at § 7. Shabott admits he has no evidence as to what date it was actually returned and has nothing to refute Wasson in this regard. Shabott Deposition at 172-173, 263-264, 339-342.*

Oppose in its entirety. The Airplane was never "delivered back" to Shabott on any date prior to 16 July 1998 or the date of the Test Flight. On that date Mercury Air called Shabott and asked him to come to its facility and to conduct a Test Flight of the Airplane. It asked him to do this because Mercury Air had completed work on the cylinders of the two engines of the Airplane and some other repairs and wanted Shabott to conduct the first of several possible Test Flights to assess the status of the Airplane as required by FAA rules At no time by the date of the Test Flight did Mercury Air in any way complete the work required by the Verbal Contract. At no time did Shabott make a full and final payment for the work required to be done under the Verbal Contract. On 16 July 1998 Shabott was required by Mercury Air to make a partial and preliminary payment of repair costs owed Mercury Air up to that date under the Verbal Contract because he was told by a Mercury Air employee at that time that it was its "policy" to obtain collect the outstanding debt prior to allowing an airplane's owner to do the FAA required Test Flight. Shabott has a current personal recollection of 16 July 1998 as being the date of the Test Flight. Shabott also has a credit card bill showing that he made the said required payment to

Shabott v. Mercury Air Group Inc. v. Avco Corp. Lycoming Div Plaintiff's Revised Opposition to Defendant's Second Motion for Summary Judgment . Civ. Act. No. 04-11575-JLT

7

Mercury Air on 16 July 1998. Shabott would have other records of the said transaction if Mercury Air had supplied Shabott copies of its financial records involving the work done under the Verbal Contract as required by the Court's discovery orders. See Shabott Affidavit 16 February 2007 ¶ 8, FAA FAR Sec. 91.401

6. *On or before 13 July 1998, Shabott flew the Airplane; discovered that it still had problems; and returned the Airplane to Mercury. Shabott Deposition at pp. 174, 177-178, 189, 347-349. At his request, the plane was delivered to Aviation Engines, Inc. for inspection, which reported that the latest problem may have resulted from Mercury's repair work. See Complaint at § 6. Wasson Affidavit at §§ 8-12, Shabott Deposition at 63.*

Oppose. Shabott did the Test Flight of the Airplane on 16 July 1998 at Mercury Air's request. During the Test Flight he discovered that the EGT gauge was malfunctioning and that the Airplane's right engine was running rough. These problems were not considered in his professional opinion as a FAA licensed pilot to be anything more than minor tuning and electrical problems. After the Test Flight ended, Mercury Air mechanics continued to work on the Airplane billing Shabott for the time. They focused totally on the broken EGT gauge and its sensors attached to the Airplane's left engine. They did no work on the rough running right engine. They ran the left engine for over a half an hour before Shabott left. On 20 July 1998. Shabott was informed by a Mercury Air employee (Wasson) on the phone that Mercury had discovered metal pieces in the crankcase of the left engine — indicating at some point during or after the Test Flight that the left engine had a catastrophic engine failure. Shabott was told later that day by Mercury Air that it would not make good on the warranty for its work on left engine of the Airplane. Shabott and Mercury Air entered into a verbal agreement within the next week that required that Mercury Air ship the Airplane's left engine to Aviation Engines, Inc. ("Independent Expert") to evaluate the cause of its catastrophic failure. Pursuant to the said verbal agreement if the Independent Expert determined that the repairs done by Mercury Air caused the said catastrophic failure of the left engine, Mercury Air would pay for the repair of the Airplane's left engine. If the Independent Expert determined the said failure was do to conditions pre-existing at the time the Verbal Contract was entered, Shabott would be responsible for the cost of the said repair See Shabott Affidavit 16 February 2007 ¶ 16 FAA FAR Sec. 91.213

7. *While again claiming that he has no evidence of the date on which he returned the plane to Mercury, Shabott acknowledges that he flew the plane immediately after and on the same date on which it was returned to him; that this was the only occasion on which he flew it after its return to him; that he experienced problems during this sole flight which he never before experienced; and that he returned the airplane to Mercury on the very same day he had picked it up and test flown it. Shabott Deposition at pp. 174, 177-178, 189, 347-349. Shabott admits that he had full access to the plane during his test flight on or before 13 July 1998, to discover the problems with it. Shabott Deposition at pp. 103, 273, 348-349.*

Case 1:04-cv-11575-JLT  Document 91  Filed 02/21/2007  Page 8 of 14

Shabott v. Mercury Air Group Inc. v. Avco Corp. Lycoming Div Plaintiff's Revised Opposition to Defendant's Second Motion for Summary Judgment . Civ. Act. No. 04-11575-JLT

8

Oppose. Shabott has a current personal recollection of the date of the Test Flight was on 16 July 1998. Shabott has a personal recollection that on the date of the Test Flight he paid Mercury Air for repair costs owed by the date of the Test Flight. He also has a credit card bill documenting that he made the required payment of repair costs up to the date of the Test Flight on 16 July 1998. After the ~ten minute Test Flight was over he reported that the EGT gauge for the left engine was malfunctioning. He also reported that the right engine was running a little rough. In his vast experience as a FAA licensed pilot he has experienced rough running Airplane engines. He has also had several experiences with failed instrument gauges on Airplanes. Shabott has never experienced a catastrophic engine failure and has never met a pilot who has had such an experience either. <u>See</u> Shabott Affidavit 16 February 2007 ¶ 10 , FAA FAR Sec. 91.3


After the Test Flight, he told Mercury Air employees about the two said problems with the Airplanes operation. They informed him that they believed in their professional judgment that the rough running right engine was due to a "fouled spark plug." They also told him that they believed that the malfunctioning EGT gauge was either broken or that its wiring was incorrect. <u>See</u> Shabott Affidavit 16 February 2007 ¶ 11 FAA FAR Sec. 43.3 and 43.13


Only FAA certified mechanics can repair an aircraft engine. Under FAA rules Shabott could not personally inspect the engines. Upon information and belief, it would have cost Shabott thousands of dollars to have Mercury Air's mechanics to pull apart the left engine just to do a simple inspection of all the work that they has just done. It was the professional judgment on the day of the Test Flight of both Shabott and Mercury Air's mechanics that the said problems reported by Shabott after the Test Flight in no way indicated any kind of severe engine problem. At no point since the Test Flight has Mercury Air's mechanics who worked on the Airplane that day indicated that the EGT was not simply broken and that the rough running condition of the right engine was nothing more than a "fouled spark plug." see above

8.  *Shabott admits that he has no evidence to refute Wasson's statement, based on Wasson's contemporaneous written notes, that Shabott returned the plane to Mercury for the second time on 13 July 1998. Shabott Deposition at pp. 189, 263-264, 340.*

Oppose. Shabott never took the Airplane out of Mercury Air's custody since he entrusted it to them at the commencement of their Verbal Contract in June 1998. He was called and asked to do the Test Flight by Mercury Air on 16 July 1998. He was also asked to pay repair costs up to that date by Mercury Air before he did the Test Flight. The Test Flight was done with the pre-arranged understanding that Mercury Air would continue the repairs of the Airplane under the terms of the Verbal Contract. At no point prior to the Test Flight did Mercury Air return the Airplane's log books back to Shabott and continued to keep them after the Test Flight. Shabott has complete personal recollection of these facts. These facts are supported by the requirements of FAA regulations on aircraft maintenance. Wasson alleged notes have been challenged by Shabott to have been fabricated in regards to its recounting the dates in question. Shabott credit card bill documenting his payment to Mercury Air on the date of the Test Flight and his personal

Shabott v. Mercury Air Group Inc. v. Avco Corp. Lycoming Div Plaintiff's Revised Opposition to Defendant's Second Motion for Summary Judgment . Civ. Act. No. 04-11575-JLT

9

recollection indisputably demonstrates that Wasson's alleged notes have no credibility. See Shabott Affidavit 16 February 2007 ¶ 34, FAA FAR Sec. 91.3

9. *In fact, Shabott admits that he has no evidence to refute any statement made be Wasson in his affidavit. Shabott Deposition at pp. 114-119, 125, 127, 129, 133, 134, 150-151, 153-157, 172-173. It was a "pretty cloudy time and a pretty bad time" for him., and he would "need some sort of document to confirm when things happened" but he does not have the documents. Shabott Deposition at 133.*

Oppose. See above #7 and #8. Shabott has a complete and personal recollection of the dates associated with the events underlying the instant action. His statements in his deposition refer to only the lack of printed documentation in his possession. He currently has a copy of his credit card receipt for the payment made to Mercury Air on the date of the Test Flight. Shabott also maintains that Mercury Air is in possession of similar evidentiary documentation but has deliberately refused to supply this documentation to Shabott in violation of discovery orders by the Court and its rules governing discovery.

10. *Shabott contends that following his test flight on 13 July 1998 when he discovered new problems with the plane and his return of the plane that same day to Mercury, he entered into two additional written agreements with Mercury, although he admits he has no copies of these agreements. Shabott Deposition at pp. 194-195, 198-201, 216-217, 232-233, 302, 331-339.*

Oppose. See above #8 and #9. After Mercury Air refused to honor its Verbal Contract and its contract of warranty with Shabott on 20 February 1998, Shabott and Mercury Air entered into a verbal agreement — memorialized afterwards in writing — that the conflict on liability for the catastrophic engine failure of the Airplane's left engine would be settled by an Independent Expert. Eventually Mercury Air breached this verbal agreement. After Mercury Air started billing Shabott for storage of his Airplane. Shabott entered a second verbal contract ("Storage Contract") with Mercury Air in which he agreed to have his Airplane stored outdoors if Mercury Air performed certain maintenance on it top prevent it from being damaged by the wind. The verbal Storage Contract was at some point later memorialized in writing. Despite being memorialized eventually in writing, these were wholly verbal agreement/contract. The said written documents are not currently available to Shabott. See Shabott Affidavit 16 February 2007 ¶ 16

11. *The first such additional agreement allegedly contains Mercury's promise that, if it were determined that Mercury's repair work had caused the damage which had resulted in the problems Shabott experienced during his test flight, Mercury would pay to repair the plane. Shabott Deposition at pp. 190, 194, 216-217, 224-226.*

Oppose. See above #9 and #10. The said verbal agreement requires that the mutually selected Independent Expert will be the sole arbitrator of who will beheld liable for the said catastrophic engine failure. See Shabott Affidavit 16 February 2007 ¶ 16

Case 1:04-cv-11575-JLT   Document 91   Filed 02/21/2007   Page 10 of 14

Shabott v. Mercury Air Group Inc. v. Avco Corp. Lycoming Div Plaintiff's Revised Opposition to Defendant's Second Motion for Summary Judgment . Civ. Act. No. 04-11575-JLT

10

12. *Shabott contends that this written agreement was a one page written document that he "knows" he received a copy of it, but cannot find it. Shabott Deposition at pp. 195, 216-218.*

Oppose. See above # 8 Shabott has proven that this agreement was negotiated verbally and shook on, it was only then memorialized in writing afterwards. Shabott has also brought into evidence that a lot of his paperwork was in the possession of his disgruntled ex wife whom he was in an ongoing family court battle with. Mercury has blatantly withheld discovery, and bribed credible witnesses with "consultation fees". See Shabott Affidavit 16 February 2007 ¶ 18

13. *Shabott acknowledges that, notwithstanding this agreement, it was his expectation that Mercury would pay for any damage to the plane which it had caused and compensate him for his period of loss of the plane. Shabott Deposition at pp. 218-220, 222, 227-229. He wants his plane fixed. Shabott Deposition at 188.*

Oppose. See above #11 and #12. The original Verbal Contract and it associated contract of warranty requires that Mercury Air take full responsibility for completing the repair work required by the Verbal Contract. These said contracts require Mercury Air to correct any mistakes it might make during the repair process and then to complete the repair of the Airplane to flight worthy status as governed by FAA regulations. On 20 February 1998 Mercury Air breached the Verbal Contract not only when it would not arrange for correcting the mistakes it made in the repair of the Airplanes left engine but it also completely refused to continue the other repair work on the Airplane required under the Verbal Contract — including refusing to work on the rough running problem with the right engine of the Airplane. It breach its contract of warranty with Shabott by refusing to correct the damage done to the Airplane's left engine by its negligent repair of it. The said agreement was necessitated because Mercury Air completely abandoned its duties it owed Shabott under the Verbal Contract. See Shabott Affidavit 16 February 2007 ¶ 18

14. *The second such additional agreement related to the manner in which Mercury would store the plane while it had possession thereof, including, inter alia, provisions that the engines be turned over weekly, that the tires be kept inflated and that fuel be kept in its tanks. Shabott Deposition at pp. 199-201, 232, 285-286.*

Oppose. See above #10. The Storage Contract came to be because Mercury Air had abandoned the Verbal Contract and its subsequent Warranty Agreement with Shabott. It considered the Airplane to be a trespass on its property and began billing Shabott. Mercury wrote Shabott demanding he remove his plane or continue to be charged its standard storage charge for any aircraft stored at its facility not being repaired. Shabott could not afford to pay to move his Airplane or pay the unilaterally imposed storage charges. See Shabott Affidavit 16 February 2007 ¶ 18

Case 1:04-cv-11575-JLT  Document 91  Filed 02/21/2007  Page 11 of 14

Shabott v. Mercury Air Group Inc. v. Avco Corp. Lycoming Div Plaintiff's Revised Opposition to Defendant's Second Motion for Summary Judgment . Civ. Act. No. 04-11575-JLT

11

> 15. *Shabott acknowledges that he has not been able to find his copy of this agreement either. Id. They were prepared when he was going through a separation with his wife and his record keeping was slipshod and things got put in the wrong places and lost sometimes. Shabott Deposition at pp. 201-203, 206.*

Oppose. See above #12. Shabott has proven that this agreement was negotiated verbally and shook on, it was only then memorialized in writing afterwards. Shabott has also brought into evidence that a lot of his paperwork was in the possession of his disgruntled ex wife whom he was in an ongoing family court battle with. Mercury is being untruthful if they claim negotiated verbally. In this case Mercury and their Attorney have been untruthful, submitted fabricated evidence, false withheld discovery, and bribed credible witnesses with "consultation fees". See Motion for Relief R-60, Motion for Show Cause Hearing for Contempt.

> 16. *Shabott has not, and cannot, allege any consideration given by him to Mercury to support these new written agreements. Rather, they are nothing more than reaffirmations of essential elements implicit in the original repair agreement, to wit, that Mercury would be responsible for any damages it might cause to the plane and, that while the plane was in Mercury's possession it would be stored and maintained in an appropriate manner such that it would not be further damaged. Shabott Deposition at pp. 222, 227-228, 237-240, 293-294.*

Oppose. See above #15. Shabott has testified in affidavit under oath that this agreement was negotiated verbally and shook on, it was only then memorialized in writing afterwards. The Storage agreement was made at Mercury's request. Three Mercury employees were present, two of them have been paid money from Mercury for their cooperation. This agreement was made *10 months* after Mercury improperly repaired his plane and rendered in unusable. See Shabott Affidavit 16 February 2007 ¶ 18

> 17. *Shabott admits that Mercury has never charged him for the storage of his plane and that he has not paid Mercury anything to store it. The only payment that he made to Mercury was for the repairs, which he made before the plane was returned to him on 13 July 1998. Shabott Deposition at pp. 70, 233, 321-322.*

Oppose. See above #16 Mercury billed me in writing for ~$6000.00 in storage fees. Shabott has never received a written credit for the storage charges. See Shabott Affidavit 16 February 2007 ¶¶18, 35 Appendix tab 6 Page 48

> 18. *On 14 July 1998, Shabott filed his complaint against Mercury for the damage caused by the repairs made on or before 13 July 1998.*

Oppose. See above #5 The repairs were completed on 16 July 1998 Shabott Affidavit 16 February 2007 ¶ 8, Motion for Relief R-60.

Case 1:04-cv-11575-JLT  Document 91  Filed 02/21/2007  Page 12 of 14

Shabott v. Mercury Air Group Inc. v. Avco Corp. Lycoming Div Plaintiff's Revised Opposition to Defendant's Second Motion for Summary Judgment . Civ. Act. No. 04-11575-JLT

12

**Argument**

I.  Shabott's Breach of Contract and Breach of Contract Warranty Claims against Mercury Accrued On or After 16 July 1998 is within the allowable period of time allowed under applicable Statute of Limitations

Its is an issue of material fact — under any possible legal theory — on whether Shabott's breach of contract and breach of contract warranty claims accrued on or after 16 July 1998 — as maintained by Shabott in his Complaint. It is undisputable that Shabott made a partial payment to Mercury Air for his Airplane's repairs the same day he did the Test Flight that he was requested to take by Mercury Air. This date was 16 July 1887, Shabott has produced a copy of his credit card record ("Credit Receipt") o show this and the Credit Receipt cannot be seriously disputed by anyone.

The problems identified by Shabott on his Test Flight cannot be considered indicative of a possible catastrophic engine failure and Shabott. It is a material issue of fact to be decided by a jury whether these minor mechanical problems in any way could be rationally construed as symptomatic of the Left Engine's catastrophic breakdown instead of simply being coincidental to the Left Engine's destruction by the Defendant. The Defendants presented no evidence that any of these problems was actually linked to the possible causes of the Left Engine breakdown.

If the Court insisted that Shabott's claims accrued on the date of the Test Flight, Shabott should enjoy the benefit of the discovery rule and the statute of limitations should be tolled until the date that Mercury Air informed him of the Left Engines catastrophic engine failure. Shabott's response showed immediate diligence to seek out the cause of the mechanical and electrical problems discovered by him of his Airplane during his Test Flight. He paid Mercury Air to diagnose these problems and they were unable to on the date of the Test Flight. As an aviation

Case 1:04-cv-11575-JLT   Document 91   Filed 02/21/2007   Page 13 of 14

Shabott v. Mercury Air Group Inc. v. Avco Corp. Lycoming Div Plaintiff's Revised Opposition to Defendant's Second Motion for Summary Judgment . Civ. Act. No. 04-11575-JLT

13

professional there was simply no reason to believe that the minor said problems discovered on the Test Flight was possibly in any way a harbinger of the Left Engines complete engine failure, — if it even occurred during the Test Flight and not after when the Mercury Air mechanics were running Shabott's Airplane engines for over an hour after the Test Flight. .

II. There is no rational basis to claim that Shabott should have been aware of catastrophic breakdown of the Left Engine based on the Mechanical and Electric Problems Encountered by Him on His Test Flight of the Airplane.

III. Shabott's Breach of Contract Claims Against Mercury Air Arise from Its Failure to Continue to Repair his Airplane after It discovered the Catastrophic Failure of His Airplane's Left Engine.

IV. Shabott's Breach of Contract Warranty Claims Against Mercury Air Arise form Its Failure to Rebuild the Left Engine of his Airplane after It discovered the Catastrophic Failure of the Left Engine

V. The Verbal Contract was not Consummated on the date of Shabott's Test Flight but Continued Until it was Breached by Mercury Air from Its Failure to Continue to Repair his Airplane after It discovered the Catastrophic Failure of His Airplane's Left Engine.

VI. The Storage Contract is a Separate and Individual Contract Arising Out of Mercury Air's Attempt to Coerce Storage Fees Out of Shabott and Had Nothing to Do with Issues Involving the Defendant's Breach of Their Verbal Contract.

Case 1:04-cv-11575-JLT   Document 91   Filed 02/21/2007   Page 14 of 14

Shabott v. Mercury Air Group Inc. v. Avco Corp. Lycoming Div Plaintiff's Revised Opposition to Defendant's Second Motion for Summary Judgment . Civ. Act. No. 04-11575-JLT

14

## Summary

For the above reasons Shabott asks the Court to DENY the Defendant's Summary Judgment Motion.

BY:

_____
Leon Shabott, Plaintiff
4137 Center Pond Road
Newark, VT 05871
802-309-8707

*Pro Se*

## CERTIFICATION OF SERVICE

I certify that I have served on this date a copy of this motion on the Defendant's attorney and Third Party Defendant's attorney VIA U. S. First Class Mail on 21 February 2007

_____
Leon Shabott, Plaintiff